# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____

ZONYA A. FLEMINGS,

    Plaintiff

vs.

MIAMI-DADE COUNTY

U.S. SECURITY ASSOCIATES, INC.

UNIVERSAL PROTECTION SERVICE, LLC

ALLIEDBARTON SECURITY SERVICES LLC
                , Defendant(s).

_____/

FILED BY_____D.C.

APR 0 1 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## COMPLAINT

## NATURE OF THE ACTION

1. This action is presented by Zonya A. Flemings, (Hereinafter "Plaintiff") as an action to recover unpaid minimum wage & unpaid overtime compensation, for liquidated damages, for equitable damages, attorney's fees, court fee's and costs, and for any other relief available under the Fair Labor Standards Act, as amended, 29 U.S.C § 201 *et seq.* (hereinafter referred to as "the FLSA"), as well as attorneys' fees and other costs associated with this legal proceeding.

2. Unless otherwise specified, all docket references are referring to case 18-cv-24861 of the Southern District Court of Florida

3. ALLIED SECURITY HOLDINGS, LLC purchased U.S. SECURITY ASSOCIATES, INC on or around March 8, 2019.

4. UNIVERSAL PROTECTION SERVICE, LLC purchased U.S. SECURITY ASSOCIATES, INC on or around March 8, 2019.

## CASE OF ACTION

5. This case arises from under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.

## PARTIES, JURISDICTION & VENUE

6. This Court has jurisdiction to hear this case under 29 U.S.C. § 216(b), 28 U.S.C. §1331, §1357 and/or §1367

7. Defendant U.S.SECURITY ASSOCIATES, INC.; UNIVERSAL PROTECTION SERVICE, LLC &/or ALLIEDBARTON SECURITY SERVICES LLC ("EMPLOYER"), are all Delaware for-profit corporation is authorized and conducting business in the State of Florida.

8. The County is the local government commonly known as "Miami-Dade County" (Hereinafter "the County" or "Defendant MDC")

9. Plaintiff's employment with "USSA" was included within Its acquisition of the security business from 50 STATE SECURITY, INC. The business transaction was on or around July 8, 2016[1], however, Plaintiff's Employed date ("EOD") remained Oct 2014.

10. Defendant MIAMI-DADE COUNTY ("MDC") is/was a Florida municipality, conducting business in Miami-Dade County, Florida and is/was engaged in interstate commerce.

11. Defendants EMPLOYER and MDC were Plaintiff's joint-employers under FLSA laws from Oct 2014 – Jan 2018.

---

[1] Southern District of Florida Case # 1:17-cv-21896-MGC, Doc 24-1

12. Plaintiff was domiciled & a resident of Miami-Dade County, Florida, which is within the Southern District of Florida for the United States District Court Jurisdiction during her entire employment period with Defendants EMPLOYER and MDC.

13. Under FLSA laws, Defendant MDC was a part of Plaintiff's Labor Organization, who acted as Plaintiff's Employer.

14. None of the Defendants qualify for any sort of Immunity.

## FLSA LAWS

15. Plaintiff is a black female.

16. The County is the local government commonly known as "Miami-Dade County" (Hereinafter "the County" or "Defendant MDC")

17. Plaintiff was a non-exempt employee for Defendants EMPLOYER and MDC.

18. Defendant USSA & Defendant MDC was Plaintiff's employer since October 2014.

19. The County has a Department that was commonly known as the "Safety & Security" Department.

20. In accordance with 29 USC§§(203(d),203(x)), The County was a "Labor Organization" that qualified as one of Plaintiff's Employer from Oct 2014 thru January 12, 2018.

21. In Oct 2014, Defendant EMPLOYER agreed with Plaintiff to pay her a regular minimum wage rate of $14.35/hr in exchange for Plaintiff providing security work on the Metrorail contract located in Miami, FL.

22. Defendant MDC has another division of it organization enterprise called: The Miami-Dade County, Florida, Department of Regulatory and Economic Resources business affairs division Office of Consumer Protection - Wage Theft ("Wage-Theft Department"), which total exist was centered around referring equal employment

relations between employee & employers on behalf/extension of the Department of Labor (DOL). One of the functions of the Wage Theft Department was to be an advocate for employees while dealing with the employer concerning employment relation issues relating compensation financial discrepancies of a year or less, etc. (29USC§206(d)(4)).

23. Plaintiff participated in the Commerce of the Wage Theft Department on or around Feb 26, 2018.(DE85, pg16-17, 29)

24. While Plaintiff was employed with Defendant USSA, Defendant USSA & Defendant MDC admits that Defendant MDC was the one who regulated the $12.10/overtime pay for Plaintiff's mandatory training.

25. $12.10 was not the accurate overtime pay rate for Plaintiff while employed by Defendant USSA.

26. Plaintiff was initially employed with 50 State Security Service, Inc in Oct 2014.

27. Plaintiff was employed with 50 State Security Service, Inc., as a security officer pursuant to the contract between 50 State and Miami-Dade County (the "County") to provide security services for Miami-Dade County Transit System. See Complaint, p. 6. (SFLD, Case #17-CV-21896, DE24, Statements of Facts).

28. On or around December 7-8, 2014, Defendant MDC regulated Plaintiff pay to $12.46 to complete her "training" hours.(DE85, pg21)

29. On or around July 8, 2016, Defendant USSA purchased the Metrorail Contract from 50 State Security, Inc. However Plaintiff's Employed on Date ("EOD") remained Oct 2014.

30. From Oct 2014 – January 12, 2018, Defendant USSA & Defendant MDC were Plaintiff's Joint-Employer for Title VII purpose. (Faush v. Tuesday Morning, Inc., 808 F.3d 208 (3rd Cir. Nov. 18, 2015))

31. On or around Feb 28, 2018, Defendant USSA was notified by an Investigator of the Wage Theft Division of Miami-Dade County, FL about unpaid wages owed to Plaintiff that was incurred during her time of employment with Defendant USSA. Reference Case# 2018-1968 (DE85, pgs4-5).

32. While employed by Defendants EMPLOYER and MDC, Plaintiff was paid bi-weekly.

33. Because the FLSA establishes a floor for required compensation, state or local laws may require greater amounts, but, pursuant to the Supremacy Clause, may not diminish the protection of the FLSA. (29 USC §218(a)); (US Constitution, Art. VI, Cl.2); (29 C.F.R. Part 541.4)

34. Plaintiff was employed with 50 State Security Service, Inc., as a security officer pursuant to the contract between 50 State and Miami-Dade County (the "County") to provide security services for Miami-Dade County Transit System. (SFLD, Case #17-CV-21896, DE24, Statements of Facts).

35. As an armed security guard, Plaintiff was suffer to work by both Defendant EMPLOYER & MDC from Oct 2014[2] – January 12, 2018.

36. From Oct 2014 – January 12, 2018, Defendant EMPLOYER & Defendant MDC were Plaintiff's Joint-Employer for Title VII purpose. Faush v. Tuesday Morning, Inc., 808 F.3d 208 (3rd Cir. Nov. 18, 2015)

37. Both, Defendants EMPLOYER & MDC, was Plaintiff's Employers under "FLSA" Law.

38. Defendant MDC qualified as one of Plaintiff's employers because It is a local government that regulates the rates and services of the public transportation in Miami-Dade County, Florida. (Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, § 102(b), 80 Stat.830 (current version at 29 U.S.C. §§ 203(d), 203(x) Supp. IV 1974))

and Plaintiff worked on the Metrorail Transit System in Miami-Dade County as a Security Guard.

39. Section 3(s)(1)(c) of the FLSA covers all public agency employees of the State, a political subdivision of a State, or an interstate government agency.

40. As one of Plaintiff's Employers, the FLSA required that Defendant MDC pay Plaintiff at her required minimum wage rate and appropriate overtime level. However, Defendant MDC did not comply with FLSA law while dealing with Plaintiff.

41. As one of Plaintiff's Employers, the FLSA required that Defendant EMPLOYER pay Plaintiff at her required minimum wage rate and appropriate overtime level. Defendant EMPLOYER did not comply with FLSA law while dealing with Plaintiff.

42. The Lilly Ledbetter Fair Pay Act of 2009 allows a reset for gender specific discrimination at every new paycheck affected.

43. FLSA laws allows all compensation violations that involves discrimination due to Plaintiff being a Black female to be kicked-back each payperiod that the unpaid compensation affected.

44. Plaintiff's last regular paycheck from Defendant EMPLOYER was on or around January 26, 2018.

45. From on or around Mar 11,2017 to Jan 12, 2018, Defendants EMPLOYER and MDC reassigned Plaintiff's duty assignment to enforce laws to public citizens, protect property, and to prevent and detect crimes over an 7-8 mile radius 1-way.

46. Law Enforcement/Peace Officer duties are functions of the State.

47. From on or around Mar 11, 2017 to Jan 12, 2018, Plaintiff spent more than 80% of her workweek engaged in law enforcement/peace officer activities.

---

[2] Defendant USSA purchased the Metrorail Contract from 50 State Security, Inc on or around July 8, 2016

48. Plaintiff was entitled to the pay of an uncertified law enforcement/peace officer, but was denied the equal pay that her non-black, male counterparts received under FLSA.

49. Neither FLSA or the State of Florida has laws requiring employers to provide employees with vacation benefits to their employees.

50. In the State of Florida and in accordance to the law, once the Employer has chosen its policy concerning vacation leave and other benefit plans, they are then required to comply with the terms of the valid employment contract that they created.

51. Defendant EMPLOYER chose to offer an annual leave benefit package to Its employees.

52. On December 7-8, 2014, Plaintiff was paid $12.46/hr for 10.25/hrs of work completed for Defendants EMPLOYER & MDC (**DE85, pg21**). Defendant EMPLOYER paid Plaintiff less than her male counterparts to do the same work they were doing[3].

53. Defendants EMPLOYER & MDC, wage theft Plaintiff **$19.37** in unpaid wages based on our agreed upon minimum wage rate of $14.35/hr and discriminated against Plaintiff by paying her less than her Hispanic male counterparts.

54. Each paycheck Plaintiff kicked back the unpaid minimum wage amount of $19.37 until Jan 26, 2018.

55. Due to Plaintiff not being paid the **$19.37** in Dec 2014, Plaintiff was not paid correctly every paycheck from on or around Dec 29, 2014[4] until on or around until Jan 26, 2018. The lost wages for this violation calculates into Defendant EMPLOYER discriminating against Plaintiff by paying her less than her listed Comparators for **two** hours during each administrative workweek.

---

[3] Plaintiff has named her male counterparts as her "Comparators" in this injunction.
[4] Date represents the payperiod following the actual payperiod the violation took place.

56. Each paycheck that Plaintiff received from Defendant EMPLOYER represented two full administrative workweeks of pay.

57. The minimum hourly wage in Florida is $8.46.

58. Plaintiff was utilizing the hand-scanner to clock on and off duty between October 2016 and Dec 2016, However, Plaintiff's time was inserted manually by an unknown person(s). (DE85, pg57-63).

59. Defendant EMPLOYER did not maintain proper records of Plaintiff's time sheet as required by federal law.

60. By failing to maintain proper records of Plaintiff's FLSA law activities, Defendant EMPLOYER violated the law arising from under 29 CFR Part 516.

61. On or around Oct 10, 2016, Defendant EMPLOYER mandated Plaintiff to complete two-30mins trainings. (DE123, pg67), Plaintiff completed the training, which created **1hr** of overtime. @**$24.53**/hr (D.E123, pg67) However, Plaintiff was not paid for the 1hour of overtime that she worked. (DE85, pg57).

62. Defendant MDC was aware that Plaintiff was not paid for the 1 hour of overtime that she completed on or around Oct 10, 2016, but knowingly and intentionally refused to exercise Its authority & power to have Defendant EMPLOYER to pay Plaintiff.

63. Due to Plaintiff not being paid the **$19.37** in Dec 2014, and not being paid **$24.53** in Oct 2016, every paycheck from on or around Nov 5, 2016[3] until on or around until Jan 26, 2018, the lost wages calculates into Defendant EMPLOYER discriminating against Plaintiff by paying her less than her listed Comparators for **three** hours during each administrative workweek.

64. In or around Jan 2017, Defendant's EMPLOYER issued directives concerning mandating that employees utilized their site hand-scanner to clock on and off duty daily. The directives was issued by Defendant EMPLOYER's corporate office in Georgia.

65. Protected Activity: In or around Jan 2017, Plaintiff was a Supervisor for Defendant EMPLOYER. Plaintiff reinforced Defendant's EMPLOYER directives concerning the FLSA laws to her subordinates.

66. In or around Jan/Feb 2017, unknown personnel were permitted to be on the County's Metrorail grounds recruiting names on a sign-up list for a possible Class Action Lawsuit against Defendant EMPLOYER for FLSA violations.

67. Around Jan/Feb 2017, Plaintiff was approached by unknown persons claiming to be a part of some sort of Union and was inviting Plaintiff to participate in a pending FLSA Class Action lawsuit against Defendant EMPLOYER. Plaintiff declined.

68. On Feb 10, 2017, a FLSA class-action lawsuit against Defendant EMPLOYER was filed in the Eastern District of Tennessee. The case can be located under Case 2:17-cv-00029.

69. On or around Feb 10, 2017, Defendant EMPLOYER mandated Plaintiff to complete some online training. On Feb 16, 2017, Plaintiff completed **1.5hrs** of the mandatory training.(DE 85, pg25)  At that time, Plaintiff's normal workweek was 41hr/per administrative workweek. Plaintiff was entitled for 1.5 hours of overtime on **Feb 24, 2017**, but was not paid for it. (DE85, pg65). The unpaid overtime amount was **$36.79** which represents **1.5** hours of overtime @ $24.525/hrs.

70. Therefore, on or around March 10, 2017, Plaintiff kicked back **$80.68** from her paycheck back to Defendant EMPLOYER for the previous earned but unpaid compensation.

71. Protected Activity: On Feb 24, 2017, Plaintiff filed an Equal Employment Opportunity (EEO) Complaint against Defendant MDC/Defendant Castillo (DE86) (DE 89, pg33-42).

72. On Feb 17, 2017, Plaintiff completed the last **3hrs** of mandatory training that was mandated by Defendant EMPLOYER on or around Feb 10, 2017. (DE 85, pg25)

73. At the time that Plaintiff completed the 3hrs of overtime, Plaintiff's normal workweek was 42hrs/per administrative workweek and should have been paid 3 additional hours of overtime for completing the training on or around **Mar 10, 2017**, but was not.

74. Plaintiff was entitled for 3 additional hours of overtime but was not paid for it. (DE85, Pg66). The unpaid overtime amount was **$73.575** which represents **3** hours of overtime @ $24.525/hrs.

75. Protected Activity: On Mar 2, 2017, Plaintiff filed an EEO Complaint against Defendant EMPLOYER (DE 89, pg44-63).

76. Due to Plaintiff not being paid the **$19.37** in Dec 2014, **$24.53** in Oct 2016, **$36.79** on Feb 24, 2017, **$73.58** on March 10, 2017 (which equals **$154.26**), and the difference between what Plaintiff made (**$16.35/hr**)and the approximately lowest amount of what an uncertified law enforcement/peace officer starts off making in Miami-Dade County is $20.67/hr. The difference between the two rates is **$4.32/hr** or **$172.80**/weekly, on or around March 24, 2017, Plaintiff began kicking back **$327.06** from her paycheck back to Defendant EMPLOYER for the previous earned but unpaid compensation. (DE85, pg67-68).

77. Protected Activity: On or around Mar 21, 2017, Plaintiff made a complaint on Defendant EMPLOYER's Ethics Hotline (DE85, pg81)

78. On or around May 1, 2017, Defendant EMPLOYER & Defendant MDC revoked all of Plaintiff's employee benefits. (DE85, pg69-70) while Plaintiff's male, non-black co-workers maintained their life insurance/health benefit & annual leave benefits.

79. Plaintiff was denied her promised pay raise(DE85, pgs27, 71-76). The pay raise equaled to $50 a week commencing Oct 1, 2017.

80. By applying the 3 year Statue of Limitation arising from under 29 U.S. Code § 255. Plaintiff is within the statue of limitation to redress Defendants for their FLSA violations.

81. Defendant EMPLOYER willfully & repeatedly violated Plaintiff's federally protected rights, laws, statues & Acts arising from under FLSA law.

82. Defendant MDC willfully & repeatedly violated Plaintiff's federally protected rights, laws, statues & Acts arising from under FLSA law.

83. By April 2017, Plaintiff was kicking back **$327.06** of the wages that Defendant EMPLOYER delivered to her due to the unpaid minimum wage rate and unpaid overtime compensation that was on the books.(**$19.37** in Dec 2014, **$24.53** in Oct 2016, **$36.79** on Feb 24, 2017, **$73.58** on March 10, 2017 and the difference between a security officer and an uncertified police/peace officer is **$4.32/hr** or **$172.80**/weekly.

84. On or around April 7, 2017, Defendant EMPLOYER revoked Plaintiff's life/health insurance (DE85, pg69 vs pg70) and yet Defendant EMPLOYER continued to provide the life/health insurance benefits to Plaintiff's listed Comparators.

85. On or around April 14, 2017, Defendant EMPLOYER refused to provide Plaintiff with the monetary value of said policy in lieu of coverage. Defendant EMPLOYER's life/health benefit package had a face value of **$1.91/hr** (DE85, pg27).

86. While PLAINTIFF was employed with Defendant EMPLOYER, the duty roster a/k/a duty schedule was prepared daily. Therefore, Defendant EMPLOYER discriminated against Plaintiff each day that they placed PLAINTIFF to work as an uncertified law enforcement/peace officer without the equal pay.

87. On or around April 21, 2017, Defendant EMPLOYER should of paid Plaintiff an additional $327.06 in back wages, plus $4.32/hr for Quantum Meruit/ Unjust Enrichment of straight time compensation for work performed as a law enforcement/peace officer, $6.48/hr for Quantum Meruit/ Unjust Enrichment of overtime compensation for work performed as a law enforcement/peace officer in excess of 40 hours in a single administrative workweek and $152.80$^5$ in lieu of Defendant EMPLOYER's health/life insurance benefit package.(DE85, pg27) totaling **$524.32** more income than Plaintiff received. Plaintiff did not receive her earned and entitled pay.(DE85, pg69).

88. During Plaintiff's employment tenure with Defendant EMPLOYER, Defendant EMPLOYER offered & provided a paid annual leave benefit to Its employees working within the Metro-Dade Metrorail System located in Miami, Florida.(DE85, pg47-48).

89. On or around April 20, 2017, Defendant EMPLOYER revoked Plaintiff's annual leave benefits (DE85, pg70 vs pg71).

90. Defendant EMPLOYER revoked Plaintiff's annual leave within the same payperiod that Plaintiff was due to receive her 40hrs of pay for accumulating 1600hrs towards her bon-a-fide annual leave benefit plan.

91. Plaintiff's annual leave benefit plan had a monetary face value of **$654.00.**

92. By the end of April 2017, and after subtracting the kickback amount of earned but unpaid compensation that was due to Plaintiff from unpaid minimum wage compensation

&/or unpaid overtime compensation, Plaintiff was working for free for Defendants EMPLOYER and MDC.

93. The amount that Defendant EMPLOYER paid Plaintiff weekly did not cover Plaintiff's weekly kickbacks.

94. Plaintiff was constructively discharged on January 12, 2018(DE84, pg11) and received her final regularly scheduled paycheck from Defendant EMPLOYER on or around January 26, 2018.

95. Florida's minimum hourly wage standard of $8.46.

96. On May 25, 2017, Plaintiff filed EEOC Charge #510-2017-03012 against Defendant EMPLOYER (DE83, pg62)[6]

97. On or around July 6, 2017, Plaintiff filed EEOC Charge No#510-2017-03353 against Defendant MDC was created (DE89, pg65,66)

98. On /around Sept. 26, 2017, Plaintiff, through her Council (at that time), requested that the EEOC's Miami office to add Defendant EMPLOYER to Charge No#510-2017-03353 as a Respondent. (DE 81, pg 26, 59, 60). However, Plaintiff's request was denied (DE89, pg11).

99. Due to Plaintiff participation in the protected activity in Sept 2017, on or around Oct 26, 2017, when Defendant EMPLOYER issued a notification of an $1.25/hr pay raise cross the board as an insurance supplemental for Its employee, Plaintiff was excluded from receiving the payraise. The pay raise was effective Oct 1, 2017. Therefore, Plaintiff was deprived an additional **$50.00** per administrative workweek (**$100.00**/per payperiod) on top of the other violations.

---

[5] Representing $1.91/hr up to the first 40/hrs in an administrative workweek
[6] EEO Report was printed on 7-26-17, which is 2 days after the closing of Charge was closed.

100.     Plaintiff was Constructively Discharged on Jan 12, 2018.

101.     On or around Feb 28, 2018, Defendant EMPLOYER was notified by an Investigator of the Wage Theft Division of Miami-Dade County, FL about unpaid wages owed to Plaintiff, which was earned during her time of employment with Defendant EMPLOYER. Reference Case# 2018-1968 (DE85, pgs4-5).

102.     Defendants EMPLOYER & MDC refused to pay Plaintiff her entitled wages.

103.     The EPA "….includes all payments made to or on behalf employees as remuneration for employment. All forms of compensation are covered, including salary, overtime pay, bonuses, stock options, profit sharing and bonus plans, life insurance, vacation and holiday pay, cleaning or gasoline allowances, hotel accommodations, reimbursement for travel expenses, and benefits.".

104.     Sec 216(e) of Title 29 of the US Code authorizes Plaintiff to receive a civil monetary penalty from Defendants MDC & Employer per repeated or willful violations.

105.     Plaintiff requests a $2,000 civil monetary penalty award per violation.

106.     Since the unpaid wages have not been paid in full, the requested payments are still outstanding and owed to Plaintiff, "wages" cannot be considered to have been paid by the Employer and received by the employee unless they are paid finally & unconditionally or "Free and Clear". (29 CFR § 531.35).

107.     When Plaintiff participated in "protected activities" in accordance with FLSA laws, Defendants EMPLOYER & MDC used unfair labor practices, unequal terms/conditions of Plaintiff's employment, Intimidation & altered the terms of Plaintiff's employment in retaliation for her participation..

## PLAINTIFF'S REDRESSING SOUGHT

**THEREFORE**, Plaintiff respectfully request the Courts for the following relief jointly and separately against the Defendants EMPLOYER and MDC:

a. A declaratory judgment against Defendants that they have willfully violated FLSA & Florida labor laws;

b. Award Plaintiff damages in the amount of all applicable statutory laws & acts violations arising from under FLSA & Florida labor laws;

c. Award Plaintiff liquidated damages in an amount equal to the compensation shown to be owed to her pursuant to 29 U.S.C. § 216(b);

d. Award Plaintiff reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b) and for further legal obligations.

e. Adjure and Order the Commencement of 216(b) of Title 29 action for the recovery of unpaid minimum wages and unpaid overtime compensation

f. Grant Plaintiff the $2,000 civil monetary penalty award per violation, per Defendant

g. Adjure and Decree the commencement of a 29 USC§216(b) Proceeding

h. Order & Decree that Defendant EMPLOYER & Defendant MDC were Plaintiff's Joint Employers from Oct 2014 – Jan 12, 2018

i. Adjure and Decree back pay and reinstatement of Plaintiff's employment with Defendant EMPLOYER &/or Defendant MDC or a year of advance pay and benefits as a Peace/Law Enforcement agent with Defendant EMPLOYER

j. Adjure and Decree that Defendants MDC pay Plaintiff moving expenses including first, last & security deposit of the resident of her choosing.

k.  Adjure and Decree that Defendant EMPLOYER pay Plaintiff moving expenses including first, last & security deposit of the resident of her choosing.

l.  Adjure and Decree that Defendant EMPLOYER pay Plaintiff moving expenses including first, last & security deposit of the resident of her choosing.

m.  Adjure and Decree that Plaintiff be placed on paid administrative leave with full benefits from now through six months after the completion of this legal proceeding

n.  Adjure and Decree the full payment of the lost Payment to Plaintiffs

o.  Adjure and Decree that Defendant MDC willingly & knowingly committed wage Theft against Plaintiff

p.  Adjure and Decree that Defendant EMPLOYER willingly & knowingly committed wage Theft against Plaintiff

q.  Adjure and Decree that the contract between Plaintiff & MG Legal Group dated by Plaintiff on 10/3/18 is voided & non-enforceable (DE 82, pg18-21)

r.  Declare & Deem that Defendant EMPLOYER violated the US Labor Laws against Plaintiff by withholding unpaid overtime compensation belonging to Plaintiff.

s.  Declare & Deem that Defendant EMPLOYER knowingly & willfully violated the US Labor Laws against Plaintiff by withholding unpaid minimum wage compensation belonging to her.

t.  Declare & Deem that Defendant EMPLOYER violated the US Labor Laws against Plaintiff by withholding unpaid overtime compensation belonging to Plaintiff.

u. Declare & Deem that Defendant MDC knowingly & willfully violated the US Labor Laws against Plaintiff by withholding unpaid minimum wage compensation belonging to her.

v. Declare that Plaintiff's Domicile is still the State of Florida.

w. Declare & Order that the Southern District Court of Florida will maintain Exclusive Jurisdiction over any & all matters in which It has Subject-matter Jurisdiction arising from Plaintiff's employment with Defendants EMPLOYER & MDC

x. Grant and Order Plaintiff's Lost Wages, and an additional equal amount as liquidated damages;

y. Order & Issue a Temporary Restraining Order for any and all Internal Revenue actions against Plaintiff arising out of Florida.

z. Order & Issue a Temporary Restraining Order for any and all Internal Revenue actions against Plaintiff arising out of Pennsylvania.

aa. Order & Issue a Temporary Restraining Order for any and all Internal Revenue actions against Plaintiff arising out of the Internal Revenue Services.

bb. Order & Issue a Permanent Injunction, barring any of the Defendants from any further retaliation activities against Plaintiff, Plaintiff's special interest groups, Businesses etc.

cc. Adjure and Decree that Defendant MDC was one of Plaintiff's employer from Oct 2014 – January 12, 2018.

dd. Adjure and Declare that Plaintiff's $19.37 that employee has earned on Dec 7-8, 2014, was kickback by Plaintiff each payperiod until Jan 26, 2018.

ee. Adjure and Deem that Defendant EMPLOYER willfully and repeatedly withheld Plaintiff's wages from her and Deemed the wages uncompensated minimum wages/overtime, respectively.

ff. Adjure and Deem that the removal of Plaintiff's Annual Leave Benefit was in violation of the Equal Pay Act, as Amended (29 US Code§§206(d)(4)) and based on Plaintiff being a female.

gg. Adjure and Deem that the removal of Plaintiff's Annual Leave Benefit was in violation of 29 US Code§§215(a)(3) and Defendant MDC retaliated against Plaintiff because she filed an EEO Complaint against Defendant MDC on Feb 24, 2017 (DE 86) and then reported them to Defendant EMPLOYER on or around Mar 23, 2017.

hh. Adjure and Decree Defendant MDC was a part of Plaintiff's Labor Organization acting as Plaintiff's Employer with Defendant EMPLOYER in accordance to 29 USC §§201 – 219, as amended while Plaintiff was working on the Metrorail Contract in Miami, FL from Oct 2014 – Jan 12, 2018.

ii. Enter a judgment against Defendant EMPLOYER and award Plaintiff the costs of this action, coupled with all of the reasonable attorneys' fees, both past & present and in association with this case. Past cases include attorney cost, filings with the Florida Division of Administrative Hearings, RE: Case No. 19-2223, SDFL Case #18-cv-24681 & #18-cv-24861

jj. Enter a judgment against Defendant EMPLOYER and award Plaintiff the costs of this action, coupled with all of the reasonable attorneys' fees, both past & present and in

association with this case. Past cases include attorney cost, filings with the Florida

Division of Administrative Hearings, RE: Case No. 19-2223

kk. Enter a judgment against Defendant MDC and award Plaintiff the costs of this action,

coupled with all of the reasonable attorneys' fees, both past & present and in association

with this case. Past cases include attorney cost, filings with the Florida Division of

Administrative Hearings, RE: Case No. 19-2223

ll. Enter a judgment against Defendant MDC and award Plaintiff the costs of this action,

coupled with all of the reasonable attorneys' fees, both past & present and in association

with this case. Past cases include attorney cost in case #18-cv-24861.

mm.     Enter a judgment against Defendant MDC and award Plaintiff the costs of this

action, coupled with all of the reasonable attorneys' fees, both past & present and in

association with this case. Past cases include attorney cost in case #18-cv-24681,

nn. Adjure and Decree that the Southern District of Florida will maintain Exclusive

Jurisdiction over this case.

oo. Deny all of Defendants request for set-asides.

pp. For any reason that payments are not able to be delivered to Plaintiff directly, Plaintiff's

contingencies that are applicable to the related situation will be accepted and honored by

the Courts without limitations until all payments due to Plaintiff are paid.

qq. Enter a judgment requiring that Defendant EMPLOYER & MDC be **Jointly & Severally**

liable for damages; and

**rr.** That this Honorable Court deems just and proper from the Plaintiff's benefit under the

disclosed circumstances to award to this Plaintiff.

Plaintiff prays that true Justice prevails.

Respectfully submitted this _____ day of_____ , 2020.

**Zonya A. Flemings, Pro Se Plaintiff**
**P.O. Box 10054**
**Erie, PA 16514**
**Phone : 814-434-3164**

## SERVICE LIST FOR DEFENDANTS

| | |
|---|---|
| MIAMI-DADE COUNTY<br>111 NW 1st Street Suite 2810<br>MIAMI, FL 33128 | TO: MIAMI-DADE COUNTY through its Agent:<br><br>CARLOS A. GIMENEZ<br>111 NW 1ST ST #2910<br>MIAMI, FL 33128 |
| TO: U.S SECURITY ASSOCIATES, INC.<br>through its Registered Agent:<br><br>C T CORPORATION SYSTEM<br>1200 SOUTH PINE ISLAND ROAD<br>PLANTATION, FL 33324 | TO: ALLIEDBARTON SECURITY<br>SERVICES LLC through its Registered Agent:<br><br>C T CORPORATION SYSTEM<br>1200 SOUTH PINE ISLAND ROAD<br>PLANTATION, FL 33324 |
| TO: UNIVERSAL PROTECTION SERVICE, LLC<br>through its Registered Agent:<br><br>C T CORPORATION SYSTEM<br>1200 SOUTH PINE ISLAND ROAD<br>PLANTATION, FL 33324 | |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**Case No.** _____

ZONYA A. FLEMINGS,

    Plaintiff

vs.

MIAMI-DADE COUNTY

U.S. SECURITY ASSOCIATES, INC.

UNIVERSAL PROTECTION SERVICE, LLC

ALLIEDBARTON SECURITY SERVICES LLC
                        , Defendant(s).
_____/

## COMPLAINT

### NATURE OF THE ACTION

1. This action is presented by Zonya A. Flemings, (Hereinafter "Plaintiff") as an action to recover unpaid minimum wage & unpaid overtime compensation, for liquidated damages, for equitable damages, attorney's fees, court fee's and costs, and for any other relief available under the Fair Labor Standards Act, as amended, 29 U.S.C § 201 *et seq.* (hereinafter referred to as "the FLSA"), as well as attorneys' fees and other costs associated with this legal proceeding.

2. Unless otherwise specified, all docket references are referring to case 18-cv-24861 of the Southern District Court of Florida

3. ALLIED SECURITY HOLDINGS, LLC purchased U.S. SECURITY ASSOCIATES, INC on or around March 8, 2019.

4. UNIVERSAL PROTECTION SERVICE, LLC purchased U.S. SECURITY ASSOCIATES, INC on or around March 8, 2019.

## CASE OF ACTION

5. This case arises from under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.

## PARTIES, JURISDICTION & VENUE

6. This Court has jurisdiction to hear this case under 29 U.S.C. § 216(b), 28 U.S.C. §1331, §1357 and/or §1367

7. Defendant U.S.SECURITY ASSOCIATES, INC.; UNIVERSAL PROTECTION SERVICE, LLC &/or ALLIEDBARTON SECURITY SERVICES LLC ("EMPLOYER"), are all Delaware for-profit corporation is authorized and conducting business in the State of Florida.

8. The County is the local government commonly known as "Miami-Dade County" (Hereinafter "the County" or "Defendant MDC")

9. Plaintiff's employment with "USSA" was included within Its acquisition of the security business from 50 STATE SECURITY, INC. The business transaction was on or around July 8, 2016[1], however, Plaintiff's Employed date ("EOD") remained Oct 2014.

10. Defendant MIAMI-DADE COUNTY ("MDC") is/was a Florida municipality, conducting business in Miami-Dade County, Florida and is/was engaged in interstate commerce.

11. Defendants EMPLOYER and MDC were Plaintiff's joint-employers under FLSA laws from Oct 2014 – Jan 2018.

---

[1] Southern District of Florida Case # 1:17-cv-21896-MGC, Doc 24-1

12. Plaintiff was domiciled & a resident of Miami-Dade County, Florida, which is within the Southern District of Florida for the United States District Court Jurisdiction during her entire employment period with Defendants EMPLOYER and MDC.

13. Under FLSA laws, Defendant MDC was a part of Plaintiff's Labor Organization, who acted as Plaintiff's Employer.

14. None of the Defendants qualify for any sort of Immunity.

## FLSA LAWS

15. Plaintiff is a black female.

16. The County is the local government commonly known as "Miami-Dade County" (Hereinafter "the County" or "Defendant MDC")

17. Plaintiff was a non-exempt employee for Defendants EMPLOYER and MDC.

18. Defendant USSA & Defendant MDC was Plaintiff's employer since October 2014.

19. The County has a Department that was commonly known as the "Safety & Security" Department.

20. In accordance with 29 USC§§(203(d),203(x)), The County was a "Labor Organization" that qualified as one of Plaintiff's Employer from Oct 2014 thru January 12, 2018.

21. In Oct 2014, Defendant EMPLOYER agreed with Plaintiff to pay her a regular minimum wage rate of $14.35/hr in exchange for Plaintiff providing security work on the Metrorail contract located in Miami, FL.

22. Defendant MDC has another division of it organization enterprise called: The Miami-Dade County, Florida, Department of Regulatory and Economic Resources business affairs division Office of Consumer Protection - Wage Theft ("Wage-Theft Department"), which total exist was centered around referring equal employment

relations between employee & employers on behalf/extension of the Department of Labor (DOL). One of the functions of the Wage Theft Department was to be an advocate for employees while dealing with the employer concerning employment relation issues relating compensation financial discrepancies of a year or less, etc. (29USC§206(d)(4)).

23. Plaintiff participated in the Commerce of the Wage Theft Department on or around Feb 26, 2018.(DE85, pg16-17, 29)

24. While Plaintiff was employed with Defendant USSA, Defendant USSA & Defendant MDC admits that Defendant MDC was the one who regulated the $12.10/overtime pay for Plaintiff's mandatory training.

25. $12.10 was not the accurate overtime pay rate for Plaintiff while employed by Defendant USSA.

26. Plaintiff was initially employed with 50 State Security Service, Inc in Oct 2014.

27. Plaintiff was employed with 50 State Security Service, Inc., as a security officer pursuant to the contract between 50 State and Miami-Dade County (the "County") to provide security services for Miami-Dade County Transit System. See Complaint, p. 6. (SFLD, Case #17-CV-21896, DE24, Statements of Facts).

28. On or around December 7-8, 2014, Defendant MDC regulated Plaintiff pay to $12.46 to complete her "training" hours.(DE85, pg21)

29. On or around July 8, 2016, Defendant USSA purchased the Metrorail Contract from 50 State Security, Inc. However Plaintiff's Employed on Date ("EOD") remained Oct 2014.

30. From Oct 2014 – January 12, 2018, Defendant USSA & Defendant MDC were Plaintiff's Joint-Employer for Title VII purpose. (Faush v. Tuesday Morning, Inc., 808 F.3d 208 (3rd Cir. Nov. 18, 2015))

31. On or around Feb 28, 2018, Defendant USSA was notified by an Investigator of the Wage Theft Division of Miami-Dade County, FL about unpaid wages owed to Plaintiff that was incurred during her time of employment with Defendant USSA. Reference Case# 2018-1968 (DE85, pgs4-5).

32. While employed by Defendants EMPLOYER and MDC, Plaintiff was paid bi-weekly.

33. Because the FLSA establishes a floor for required compensation, state or local laws may require greater amounts, but, pursuant to the Supremacy Clause, may not diminish the protection of the FLSA. (29 USC §218(a)); (US Constitution, Art. VI, Cl.2); (29 C.F.R. Part 541.4)

34. Plaintiff was employed with 50 State Security Service, Inc., as a security officer pursuant to the contract between 50 State and Miami-Dade County (the "County") to provide security services for Miami-Dade County Transit System. (SFLD, Case #17-CV-21896, DE24, Statements of Facts).

35. As an armed security guard, Plaintiff was suffer to work by both Defendant EMPLOYER & MDC from Oct 2014[2] – January 12, 2018.

36. From Oct 2014 – January 12, 2018, Defendant EMPLOYER & Defendant MDC were Plaintiff's Joint-Employer for Title VII purpose. Faush v. Tuesday Morning, Inc., 808 F.3d 208 (3rd Cir. Nov. 18, 2015)

37. Both, Defendants EMPLOYER & MDC, was Plaintiff's Employers under "FLSA" Law.

38. Defendant MDC qualified as one of Plaintiff's employers because It is a local government that regulates the rates and services of the public transportation in Miami-Dade County, Florida. (Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, § 102(b), 80 Stat.830 (current version at 29 U.S.C. §§ 203(d), 203(x) Supp. IV 1974))

and Plaintiff worked on the Metrorail Transit System in Miami-Dade County as a Security Guard.

39. Section 3(s)(1)(c) of the FLSA covers all public agency employees of the State, a political subdivision of a State, or an interstate government agency.

40. As one of Plaintiff's Employers, the FLSA required that Defendant MDC pay Plaintiff at her required minimum wage rate and appropriate overtime level. However, Defendant MDC did not comply with FLSA law while dealing with Plaintiff.

41. As one of Plaintiff's Employers, the FLSA required that Defendant EMPLOYER pay Plaintiff at her required minimum wage rate and appropriate overtime level. Defendant EMPLOYER did not comply with FLSA law while dealing with Plaintiff.

42. The Lilly Ledbetter Fair Pay Act of 2009 allows a reset for gender specific discrimination at every new paycheck affected.

43. FLSA laws allows all compensation violations that involves discrimination due to Plaintiff being a Black female to be kicked-back each payperiod that the unpaid compensation affected.

44. Plaintiff's last regular paycheck from Defendant EMPLOYER was on or around January 26, 2018.

45. From on or around Mar 11,2017 to Jan 12, 2018, Defendants EMPLOYER and MDC reassigned Plaintiff's duty assignment to enforce laws to public citizens, protect property, and to prevent and detect crimes over an 7-8 mile radius 1-way.

46. Law Enforcement/Peace Officer duties are functions of the State.

47. From on or around Mar 11, 2017 to Jan 12, 2018, Plaintiff spent more than 80% of her workweek engaged in law enforcement/peace officer activities.

---

[2] Defendant USSA purchased the Metrorail Contract from 50 State Security, Inc on or around July 8, 2016

48. Plaintiff was entitled to the pay of an uncertified law enforcement/peace officer, but was denied the equal pay that her non-black, male counterparts received under FLSA.

49. Neither FLSA or the State of Florida has laws requiring employers to provide employees with vacation benefits to their employees.

50. In the State of Florida and in accordance to the law, once the Employer has chosen its policy concerning vacation leave and other benefit plans, they are then required to comply with the terms of the valid employment contract that they created.

51. Defendant EMPLOYER chose to offer an annual leave benefit package to Its employees.

52. On December 7-8, 2014, Plaintiff was paid $12.46/hr for 10.25/hrs of work completed for Defendants EMPLOYER & MDC (**DE85, pg21**). Defendant EMPLOYER paid Plaintiff less than her male counterparts to do the same work they were doing[3].

53. Defendants EMPLOYER & MDC, wage theft Plaintiff **$19.37** in unpaid wages based on our agreed upon minimum wage rate of $14.35/hr and discriminated against Plaintiff by paying her less than her Hispanic male counterparts.

54. Each paycheck Plaintiff kicked back the unpaid minimum wage amount of $19.37 until Jan 26, 2018.

55. Due to Plaintiff not being paid the **$19.37** in Dec 2014, Plaintiff was not paid correctly every paycheck from on or around Dec 29, 2014[4] until on or around until Jan 26, 2018. The lost wages for this violation calculates into Defendant EMPLOYER discriminating against Plaintiff by paying her less than her listed Comparators for **two** hours during each administrative workweek.

---

[3] Plaintiff has named her male counterparts as her "Comparators" in this injunction.
[4] Date represents the payperiod following the actual payperiod the violation took place.

56. Each paycheck that Plaintiff received from Defendant EMPLOYER represented two full administrative workweeks of pay.

57. The minimum hourly wage in Florida is $8.46.

58. Plaintiff was utilizing the hand-scanner to clock on and off duty between October 2016 and Dec 2016, However, Plaintiff's time was inserted manually by an unknown person(s). (DE85, pg57-63).

59. Defendant EMPLOYER did not maintain proper records of Plaintiff's time sheet as required by federal law.

60. By failing to maintain proper records of Plaintiff's FLSA law activities, Defendant EMPLOYER violated the law arising from under 29 CFR Part 516.

61. On or around Oct 10, 2016, Defendant EMPLOYER mandated Plaintiff to complete two-30mins trainings. (DE123, pg67), Plaintiff completed the training, which created **1hr** of overtime. @**$24.53**/hr (D.E123, pg67) However, Plaintiff was not paid for the 1hour of overtime that she worked. (DE85, pg57).

62. Defendant MDC was aware that Plaintiff was not paid for the 1 hour of overtime that she completed on or around Oct 10, 2016, but knowingly and intentionally refused to exercise Its authority & power to have Defendant EMPLOYER to pay Plaintiff.

63. Due to Plaintiff not being paid the **$19.37** in Dec 2014, and not being paid **$24.53** in Oct 2016, every paycheck from on or around Nov 5, 2016[3] until on or around until Jan 26, 2018, the lost wages calculates into Defendant EMPLOYER discriminating against Plaintiff by paying her less than her listed Comparators for **three** hours during each administrative workweek.

64. In or around Jan 2017, Defendant's EMPLOYER issued directives concerning mandating that employees utilized their site hand-scanner to clock on and off duty daily. The directives was issued by Defendant EMPLOYER's corporate office in Georgia.

65. Protected Activity: In or around Jan 2017, Plaintiff was a Supervisor for Defendant EMPLOYER. Plaintiff reinforced Defendant's EMPLOYER directives concerning the FLSA laws to her subordinates.

66. In or around Jan/Feb 2017, unknown personnel were permitted to be on the County's Metrorail grounds recruiting names on a sign-up list for a possible Class Action Lawsuit against Defendant EMPLOYER for FLSA violations.

67. Around Jan/Feb 2017, Plaintiff was approached by unknown persons claiming to be a part of some sort of Union and was inviting Plaintiff to participate in a pending FLSA Class Action lawsuit against Defendant EMPLOYER. Plaintiff declined.

68. On Feb 10, 2017, a FLSA class-action lawsuit against Defendant EMPLOYER was filed in the Eastern District of Tennessee. The case can be located under Case 2:17-cv-00029.

69. On or around Feb 10, 2017, Defendant EMPLOYER mandated Plaintiff to complete some online training. On Feb 16, 2017, Plaintiff completed **1.5hrs** of the mandatory training.(DE 85, pg25) At that time, Plaintiff's normal workweek was 41hr/per administrative workweek. Plaintiff was entitled for 1.5 hours of overtime on **Feb 24, 2017**, but was not paid for it. (DE85, pg65). The unpaid overtime amount was **$36.79** which represents **1.5** hours of overtime @ $24.525/hrs.

70. Therefore, on or around March 10, 2017, Plaintiff kicked back **$80.68** from her paycheck back to Defendant EMPLOYER for the previous earned but unpaid compensation.

71. Protected Activity: On Feb 24, 2017, Plaintiff filed an Equal Employment Opportunity (EEO) Complaint against Defendant MDC/Defendant Castillo (DE86) (DE 89, pg33-42).

72. On Feb 17, 2017, Plaintiff completed the last **3hrs** of mandatory training that was mandated by Defendant EMPLOYER on or around Feb 10, 2017. (DE 85, pg25)

73. At the time that Plaintiff completed the 3hrs of overtime, Plaintiff's normal workweek was 42hrs/per administrative workweek and should have been paid 3 additional hours of overtime for completing the training on or around **Mar 10, 2017**, but was not.

74. Plaintiff was entitled for 3 additional hours of overtime but was not paid for it. (DE85, Pg66). The unpaid overtime amount was **$73.575** which represents **3** hours of overtime @ $24.525/hrs.

75. Protected Activity: On Mar 2, 2017, Plaintiff filed an EEO Complaint against Defendant EMPLOYER (DE 89, pg44-63).

76. Due to Plaintiff not being paid the **$19.37** in Dec 2014, **$24.53** in Oct 2016, **$36.79** on Feb 24, 2017, **$73.58** on March 10, 2017 (which equals **$154.26**), and the difference between what Plaintiff made (**$16.35/hr**)and the approximately lowest amount of what an uncertified law enforcement/peace officer starts off making in Miami-Dade County is $20.67/hr. The difference between the two rates is **$4.32/hr** or **$172.80**/weekly, on or around March 24, 2017, Plaintiff began kicking back **$327.06** from her paycheck back to Defendant EMPLOYER for the previous earned but unpaid compensation. (DE85, pg67-68).

77. Protected Activity: On or around Mar 21, 2017, Plaintiff made a complaint on Defendant EMPLOYER's Ethics Hotline (DE85, pg81)

78. On or around May 1, 2017, Defendant EMPLOYER & Defendant MDC revoked all of
    Plaintiff's employee benefits. (DE85, pg69-70) while Plaintiff's male, non-black co-
    workers maintained their life insurance/health benefit & annual leave benefits.

79. Plaintiff was denied her promised pay raise(DE85, pgs27, 71-76). The pay raise equaled
    to $50 a week commencing Oct 1, 2017.

80. By applying the 3 year Statue of Limitation arising from under 29 U.S. Code § 255.
    Plaintiff is within the statue of limitation to redress Defendants for their FLSA violations.

81. Defendant EMPLOYER willfully & repeatedly violated Plaintiff's federally protected
    rights, laws, statues & Acts arising from under FLSA law.

82. Defendant MDC willfully & repeatedly violated Plaintiff's federally protected rights,
    laws, statues & Acts arising from under FLSA law.

83. By April 2017, Plaintiff was kicking back **$327.06** of the wages that Defendant
    EMPLOYER delivered to her due to the unpaid minimum wage rate and unpaid overtime
    compensation that was on the books.(**$19.37** in Dec 2014, **$24.53** in Oct 2016, **$36.79** on
    Feb 24, 2017, **$73.58** on March 10, 2017 and the difference between a security officer
    and an uncertified police/peace officer is **$4.32/hr** or **$172.80**/weekly.

84. On or around April 7, 2017, Defendant EMPLOYER revoked Plaintiff's life/health
    insurance (DE85, pg69 vs pg70) and yet Defendant EMPLOYER continued to provide
    the life/health insurance benefits to Plaintiff's listed Comparators.

85. On or around April 14, 2017, Defendant EMPLOYER refused to provide Plaintiff with
    the monetary value of said policy in lieu of coverage. Defendant EMPLOYER's
    life/health benefit package had a face value of **$1.91/hr** (DE85, pg27).

86. While PLAINTIFF was employed with Defendant EMPLOYER, the duty roster a/k/a duty schedule was prepared daily. Therefore, Defendant EMPLOYER discriminated against Plaintiff each day that they placed PLAINTIFF to work as an uncertified law enforcement/peace officer without the equal pay.

87. On or around April 21, 2017, Defendant EMPLOYER should of paid Plaintiff an additional $327.06 in back wages, plus $4.32/hr for Quantum Meruit/ Unjust Enrichment of straight time compensation for work performed as a law enforcement/peace officer, $6.48/hr for Quantum Meruit/ Unjust Enrichment of overtime compensation for work performed as a law enforcement/peace officer in excess of 40 hours in a single administrative workweek and $152.80[5] in lieu of Defendant EMPLOYER's health/life insurance benefit package.(DE85, pg27) totaling **$524.32** more income than Plaintiff received. Plaintiff did not receive her earned and entitled pay.(DE85, pg69).

88. During Plaintiff's employment tenure with Defendant EMPLOYER, Defendant EMPLOYER offered & provided a paid annual leave benefit to Its employees working within the Metro-Dade Metrorail System located in Miami, Florida.(DE85, pg47-48).

89. On or around April 20, 2017, Defendant EMPLOYER revoked Plaintiff's annual leave benefits (DE85, pg70 vs pg71).

90. Defendant EMPLOYER revoked Plaintiff's annual leave within the same payperiod that Plaintiff was due to receive her 40hrs of pay for accumulating 1600hrs towards her bon-a-fide annual leave benefit plan.

91. Plaintiff's annual leave benefit plan had a monetary face value of **$654.00.**

92. By the end of April 2017, and after subtracting the kickback amount of earned but unpaid compensation that was due to Plaintiff from unpaid minimum wage compensation

&/or unpaid overtime compensation, Plaintiff was working for free for Defendants EMPLOYER and MDC.

93. The amount that Defendant EMPLOYER paid Plaintiff weekly did not cover Plaintiff's weekly kickbacks.

94. Plaintiff was constructively discharged on January 12, 2018(DE84, pg11) and received her final regularly scheduled paycheck from Defendant EMPLOYER on or around January 26, 2018.

95. Florida's minimum hourly wage standard of $8.46.

96. On May 25, 2017, Plaintiff filed EEOC Charge #510-2017-03012 against Defendant EMPLOYER (DE83, pg62)[6]

97. On or around July 6, 2017, Plaintiff filed EEOC Charge No#510-2017-03353 against Defendant MDC was created (DE89, pg65,66)

98. On /around Sept. 26, 2017, Plaintiff, through her Council (at that time), requested that the EEOC's Miami office to add Defendant EMPLOYER to Charge No#510-2017-03353 as a Respondent. (DE 81, pg 26, 59, 60). However, Plaintiff's request was denied (DE89, pg11).

99. Due to Plaintiff participation in the protected activity in Sept 2017, on or around Oct 26, 2017, when Defendant EMPLOYER issued a notification of an $1.25/hr pay raise cross the board as an insurance supplemental for Its employee, Plaintiff was excluded from receiving the payraise. The pay raise was effective Oct 1, 2017. Therefore, Plaintiff was deprived an additional **$50.00** per administrative workweek (**$100.00**/per payperiod) on top of the other violations.

---

[5] Representing $1.91/hr up to the first 40/hrs in an administrative workweek
[6] EEO Report was printed on 7-26-17, which is 2 days after the closing of Charge was closed.

100.     Plaintiff was Constructively Discharged on Jan 12, 2018.

101.     On or around Feb 28, 2018, Defendant EMPLOYER was notified by an Investigator of the Wage Theft Division of Miami-Dade County, FL about unpaid wages owed to Plaintiff, which was earned during her time of employment with Defendant EMPLOYER. Reference Case# 2018-1968 (DE85, pgs4-5).

102.     Defendants EMPLOYER & MDC refused to pay Plaintiff her entitled wages.

103.     The EPA "….includes all payments made to or on behalf employees as remuneration for employment. All forms of compensation are covered, including salary, overtime pay, bonuses, stock options, profit sharing and bonus plans, life insurance, vacation and holiday pay, cleaning or gasoline allowances, hotel accommodations, reimbursement for travel expenses, and benefits.".

104.     Sec 216(e) of Title 29 of the US Code authorizes Plaintiff to receive a civil monetary penalty from Defendants MDC & Employer per repeated or willful violations.

105.     Plaintiff requests a $2,000 civil monetary penalty award per violation.

106.     Since the unpaid wages have not been paid in full, the requested payments are still outstanding and owed to Plaintiff, "wages" cannot be considered to have been paid by the Employer and received by the employee unless they are paid finally & unconditionally or "Free and Clear". (29 CFR § 531.35).

107.     When Plaintiff participated in "protected activities" in accordance with FLSA laws, Defendants EMPLOYER & MDC used unfair labor practices, unequal terms/conditions of Plaintiff's employment, Intimidation & altered the terms of Plaintiff's employment in retaliation for her participation..

## PLAINTIFF'S REDRESSING SOUGHT

**THEREFORE**, Plaintiff respectfully request the Courts for the following relief jointly and separately against the Defendants EMPLOYER and MDC:

a. A declaratory judgment against Defendants that they have willfully violated FLSA & Florida labor laws;

b. Award Plaintiff damages in the amount of all applicable statutory laws & acts violations arising from under FLSA & Florida labor laws;

c. Award Plaintiff liquidated damages in an amount equal to the compensation shown to be owed to her pursuant to 29 U.S.C. § 216(b);

d. Award Plaintiff reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b) and for further legal obligations.

e. Adjure and Order the Commencement of 216(b) of Title 29 action for the recovery of unpaid minimum wages and unpaid overtime compensation

f. Grant Plaintiff the $2,000 civil monetary penalty award per violation, per Defendant

g. Adjure and Decree the commencement of a 29 USC§216(b) Proceeding

h. Order & Decree that Defendant EMPLOYER & Defendant MDC were Plaintiff's Joint Employers from Oct 2014 – Jan 12, 2018

i. Adjure and Decree back pay and reinstatement of Plaintiff's employment with Defendant EMPLOYER &/or Defendant MDC or a year of advance pay and benefits as a Peace/Law Enforcement agent with Defendant EMPLOYER

j. Adjure and Decree that Defendants MDC pay Plaintiff moving expenses including first, last & security deposit of the resident of her choosing.

k.  Adjure and Decree that Defendant EMPLOYER pay Plaintiff moving expenses including first, last & security deposit of the resident of her choosing.

l.  Adjure and Decree that Defendant EMPLOYER pay Plaintiff moving expenses including first, last & security deposit of the resident of her choosing.

m.  Adjure and Decree that Plaintiff be placed on paid administrative leave with full benefits from now through six months after the completion of this legal proceeding

n.  Adjure and Decree the full payment of the lost Payment to Plaintiffs

o.  Adjure and Decree that Defendant MDC willingly & knowingly committed wage Theft against Plaintiff

p.  Adjure and Decree that Defendant EMPLOYER willingly & knowingly committed wage Theft against Plaintiff

q.  Adjure and Decree that the contract between Plaintiff & MG Legal Group dated by Plaintiff on 10/3/18 is voided & non-enforceable (DE 82, pg18-21)

r.  Declare & Deem that Defendant EMPLOYER violated the US Labor Laws against Plaintiff by withholding unpaid overtime compensation belonging to Plaintiff.

s.  Declare & Deem that Defendant EMPLOYER knowingly & willfully violated the US Labor Laws against Plaintiff by withholding unpaid minimum wage compensation belonging to her.

t.  Declare & Deem that Defendant EMPLOYER violated the US Labor Laws against Plaintiff by withholding unpaid overtime compensation belonging to Plaintiff.

u. Declare & Deem that Defendant MDC knowingly & willfully violated the US Labor Laws against Plaintiff by withholding unpaid minimum wage compensation belonging to her.

v. Declare that Plaintiff's Domicile is still the State of Florida.

w. Declare & Order that the Southern District Court of Florida will maintain Exclusive Jurisdiction over any & all matters in which It has Subject-matter Jurisdiction arising from Plaintiff's employment with Defendants EMPLOYER & MDC

x. Grant and Order Plaintiff's Lost Wages, and an additional equal amount as liquidated damages;

y. Order & Issue a Temporary Restraining Order for any and all Internal Revenue actions against Plaintiff arising out of Florida.

z. Order & Issue a Temporary Restraining Order for any and all Internal Revenue actions against Plaintiff arising out of Pennsylvania.

aa. Order & Issue a Temporary Restraining Order for any and all Internal Revenue actions against Plaintiff arising out of the Internal Revenue Services.

bb. Order & Issue a Permanent Injunction, barring any of the Defendants from any further retaliation activities against Plaintiff, Plaintiff's special interest groups, Businesses etc.

cc. Adjure and Decree that Defendant MDC was one of Plaintiff's employer from Oct 2014 – January 12, 2018.

dd. Adjure and Declare that Plaintiff's $19.37 that employee has earned on Dec 7-8, 2014, was kickback by Plaintiff each payperiod until Jan 26, 2018.

ee. Adjure and Deem that Defendant EMPLOYER willfully and repeatedly withheld Plaintiff's wages from her and Deemed the wages uncompensated minimum wages/overtime, respectively.

ff. Adjure and Deem that the removal of Plaintiff's Annual Leave Benefit was in violation of the Equal Pay Act, as Amended (29 US Code§§206(d)(4)) and based on Plaintiff being a female.

gg. Adjure and Deem that the removal of Plaintiff's Annual Leave Benefit was in violation of 29 US Code§§215(a)(3) and Defendant MDC retaliated against Plaintiff because she filed an EEO Complaint against Defendant MDC on Feb 24, 2017 (DE 86) and then reported them to Defendant EMPLOYER on or around Mar 23, 2017.

hh. Adjure and Decree Defendant MDC was a part of Plaintiff's Labor Organization acting as Plaintiff's Employer with Defendant EMPLOYER in accordance to 29 USC §§201 – 219, as amended while Plaintiff was working on the Metrorail Contract in Miami, FL from Oct 2014 – Jan 12, 2018.

ii. Enter a judgment against Defendant EMPLOYER and award Plaintiff the costs of this action, coupled with all of the reasonable attorneys' fees, both past & present and in association with this case. Past cases include attorney cost, filings with the Florida Division of Administrative Hearings, RE: Case No. 19-2223, SDFL Case #18-cv-24681 & #18-cv-24861

jj. Enter a judgment against Defendant EMPLOYER and award Plaintiff the costs of this action, coupled with all of the reasonable attorneys' fees, both past & present and in

association with this case. Past cases include attorney cost, filings with the Florida Division of Administrative Hearings, RE: Case No. 19-2223

kk. Enter a judgment against Defendant MDC and award Plaintiff the costs of this action, coupled with all of the reasonable attorneys' fees, both past & present and in association with this case. Past cases include attorney cost, filings with the Florida Division of Administrative Hearings, RE: Case No. 19-2223

ll. Enter a judgment against Defendant MDC and award Plaintiff the costs of this action, coupled with all of the reasonable attorneys' fees, both past & present and in association with this case. Past cases include attorney cost in case #18-cv-24861.

mm.     Enter a judgment against Defendant MDC and award Plaintiff the costs of this action, coupled with all of the reasonable attorneys' fees, both past & present and in association with this case. Past cases include attorney cost in case #18-cv-24681,

nn. Adjure and Decree that the Southern District of Florida will maintain Exclusive Jurisdiction over this case.

oo. Deny all of Defendants request for set-asides.

pp. For any reason that payments are not able to be delivered to Plaintiff directly, Plaintiff's contingencies that are applicable to the related situation will be accepted and honored by the Courts without limitations until all payments due to Plaintiff are paid.

qq. Enter a judgment requiring that Defendant EMPLOYER & MDC be **Jointly & Severally** liable for damages; and

**rr.** That this Honorable Court deems just and proper from the Plaintiff's benefit under the disclosed circumstances to award to this Plaintiff.

Plaintiff prays that true Justice prevails.

Respectfully submitted this ____1ST____ day of ___APR___, 2020.

Zonya A. Flemings, Pro Se Plaintiff
P.O. Box 10054
Erie, PA 16514
Phone : 814-434-3164

## SERVICE LIST FOR DEFENDANTS

| | |
|---|---|
| TO: MIAMI-DADE COUNTY through its Attorney at Law:<br><br>JOSE I. LEON<br>100 SE 2nd Street Suite 3900<br>Miami, FL 33131 | TO: MIAMI-DADE COUNTY through its Agent:<br><br>CARLOS A. GIMENEZ<br>111 NW 1ST ST #2910<br>MIAMI, FL 33128 |
| TO: U.S SECURITY ASSOCIATES, INC. through its Attorney at Law:<br><br>JOSE I. LEON<br>100 SE 2nd Street Suite 3900<br>Miami, FL 33131 | TO: ALLIEDBARTON SECURITY SERVICES LLC through its Registered Agent:<br><br>C T CORPORATION SYSTEM<br>1200 SOUTH PINE ISLAND ROAD<br>PLANTATION, FL 33324 |
| TO: UNIVERSAL PROTECTION SERVICE, LLC through its Registered Agent:<br><br>C T CORPORATION SYSTEM<br>1200 SOUTH PINE ISLAND ROAD<br>PLANTATION, FL 33324 | |