UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-cv-21406-FAM

ZONYA A. FLEMINGS,

      Plaintiff,
vs.

BOARD OF COUNTY COMMISSIONERS,
MIAMI-DADE COUNTY, FLORIDA,
ALLIEDBARTON SECURITY SERVICES LLC,
ARTHUR T. SCHOFIELD,
FLORIDA BAR BOARD OF GOVERNORS,
GORDON, REES, SCULLY MANSUKHANI, LLP,
LAWRENCE J. MC GUINNESS,
JOSHUA E. DOYLE,
NOWACK AND OLSON, PLLC,
PABLO CASTILLO,
PETER J. KOUCHALAKOS,
UNIVERSAL PROTECTION SERVICE, LLC
and
U.S. SECURITY ASSOCIATES, INC.,

      Defendants.
_____/

**DEFENDANTS' REVISED MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT**

Defendants, U.S. Security Associates, ("USSA"), AlliedBarton Security Services, LLC ("AlliedBarton"), Universal Protection Service, LLC ("Universal"), and Board of County Commissions, Miami-Dade County, Florida ("Miami-Dade County") (collectively "Defendants")[1], by and through the undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6), hereby file this Revised Motion to Dismiss Plaintiff's Second Amended Complaint[2] as to the Defendants.

---

[1] Other defendants have not yet been served, to Defendants' knowledge.

[2] Plaintiff filed a document titled Second Amended Complaint on October 28, 2020 [D.E. 70], and a slightly different document titled Second Amended Complaint one day later, on October 29, 2020 [D.E. 76]. Defendants filed a Motion to Dismiss referencing D.E. 76 on November 12, 2020. Plaintiff later clarified that she intended D.E. 70 to be the

Defendants respectfully request that the Court disallow any additional amendment of pleadings by Plaintiff and that it rule on the issues raised in this Motion to Dismiss.  Plaintiff has now amended her Complaint three (3) times in this case, requiring Defendants to spend resources to revise and refile the Motion to Dismiss. This procedural abuse by Plaintiff comes atop a long history of multiple, frivolous lawsuits, all of which went through multiple amendments, as set forth below in greater detail.

In support of this Motion to Dismiss, Defendants state the following:

**Preliminary Statement**

Plaintiff Zonya Flemings, ("Plaintiff"), filed an initial Complaint in this case, making vague allegations that seemed to combine wage and hour violations and, possibly, discrimination.  She filed an Amended Complaint, adding multiple defendants, and providing even less clarity.  Now, Plaintiff has filed a Second Amended Complaint, making some changes to the identity of the defendants, and making disparate claims against them, interspersed with baseless accusations against undersigned counsel.  As far as it relates to Defendants USSA and Miami-Dade County, Plaintiff's Second Amended Complaint appears to make wage and hour claims and discrimination claims against them, although the actual causes of action are altogether ambiguous. There are no allegations of any wrongdoing at all by Defendants AlliedBarton and Universal, and the allegations against them are simply that, some time after Plaintiff's termination, AlliedBarton and/or Universal purchased USSA as a going concern.  Plaintiff's allegations make clear that USSA continues to operate as a separate company, and there is no justification for adding AlliedBarton or Universal as parties, even accepting as true the few allegations Plaintiff makes about them.

---

operative pleading, and so, after obtaining leave of Court, Defendants file this Revised Motion to Dismiss, referencing D.E. 70.

Plaintiff, in her Second Amended Complaint, mentions the Fair Labor Standards Act and the Florida Constitution, Article X, Section 24. In addition, Plaintiff's Second Amended Complaint contains allegations that seem to indicate that she intends to bring a claim of discrimination, and she cites certain sex discrimination statutes, including the Equal Pay Act and the Lilly Ledbetter Fair Pay Act of 2009. While the Second Amended Complaint contains many additional allegations, including allegations of a vague conspiracy, it appears that these allegations, and any claims resulting from them, are directed at additional defendants not yet served, and not at USSA or Miami-Dade County.

As set forth in the Defendants' Motions to Dismiss Plaintiff's original Complaint, and still applicable in regard to Plaintiff's Second Amended Complaint, Plaintiff's previous suits against Defendants, and the adverse rulings entered against her, cause a *res judicata* bar to the present action. Even if there were no previous action, Plaintiff's action against Defendants would still be barred. First, the great majority of the allegations do not relate to any failure to pay minimum wage or overtime under the Fair Labor Standards Act "("FLSA"), at 29 U.S.C. § 201 *et seq.*, the Florida Constitution, or any other federal or state law, but, it appears, that Plaintiff claims she was not paid as much wages and did not receive the same benefit package as certain comparators. This is not an FLSA claim, but, possibly, a discrimination claim, which is now barred. Second, even as alleged in Plaintiff's Second Amended Complaint, the statute of limitations has clearly run on all possible claims under the FLSA, the Equal Pay Act, or state statute. For these reasons, as explained below in greater detail, the Court should dismiss Plaintiff's Second Amended Complaint with prejudice.

## I.     BACKGROUND

### A.     History of Litigation Between Plaintiff and Defendants

Plaintiff claims she was employed by Defendant USSA and Defendant Miami-Dade County, jointly, as a security officer, beginning in October 2014. Plaintiff's Second Amended Complaint, ¶¶ 7, 98.  Plaintiff claims she separated from employment on January 12, 2018. Plaintiff's Second Amended Complaint ¶¶ 7, 98.

In February 2018, Plaintiff brought a claim of wage theft against USSA, in the Wage Theft Office of Miami Dade County's Department of Regulatory and Economic Resources. Plaintiff's Second Amended Complaint ¶¶ 171, 172.  In Paragraph 31 of her original Complaint [D.E. 1] in this action, as support for certain allegations, Plaintiff referenced Docket Entry 85, which she filed in Case No. 18-24861-CV-Scola.  A copy of that pleading, which Plaintiff titled "Plaintiff's Supplemental Filing of Wage Theft Case #2018-1968 in Accordance with Rule 7.1(b)(1)" is attached hereto as **Exhibit A**, and the Court may take judicial notice of it as part of a public record.

Exhibit A amply sets forth the allegations made by Plaintiff in her administrative wage theft case (mirroring allegations here). For instance, in her administrative complaint (Exhibit A, p. 7), Plaintiff complains of the following unpaid wages, among others: (a) unpaid training time; and (b) the claim that $300 was taken for uniforms. This echoes the allegations, in Plaintiff's Second Amended Complaint here, for unpaid training time (Plaintiff's Second Amended Complaint ¶¶ 131, 132, 133), and the strange allegation of an ongoing $300 "kickback" stemming from certain deductions in 2015. (Plaintiff's Second Amended Complaint ¶¶ 183, 514).

Plaintiff's administrative wage theft complaint led to an adversary administrative hearing, which took place on August 28, 2018, at which the parties appeared and put on their cases before an administrative law judge.  The administrative law judge, after weighing the evidence, issued a final determination that same day, ruling that Plaintiff was not owed **ANY** unpaid wages.  A copy of that final determination, of which the Court may take judicial notice, is attached hereto as **Exhibit**

**B**.  Exhibit B states, on its face, that the administrative law judge convened a hearing at which Plaintiff appeared.  Exhibit A consists of the documentary evidence submitted by Plaintiff for the administrative hearing.

Before and after her separation from employment with USSA, Plaintiff filed a series of Charges of Discrimination against USSA and against Miami-Dade County with the Equal Employment Opportunity Commission and with the Florida Commission on Human Rights. Plaintiff's Second Amended Complaint, ¶ 137, 138, 154, 155, 156. She obtained a Dismissal and Notice of Rights ("Right to Sue Letter") on July 24, 2017[3], and thereafter, with the assistance of counsel, filed suit in state court, in the Circuit Court for the Eleventh Judicial Circuit in Miami-Dade County, against Defendant USSA (under Case No. 2018-035860-CA-01), claiming sex and race discrimination under the Florida Civil Rights Act of 1993. USSA removed that lawsuit to this Court, and it was assigned to Judge Graham, under Case No. 18-cv-24861-DLG. At roughly the same time, Plaintiff, *pro se,* filed suit in this Court alleging discrimination and related claims against Miami-Dade County, an individual officer, and several EEOC employees. That case was assigned to Judge Scola, under Case No. 18-cv-24681-RNS.

Eventually, Plaintiff's counsel withdrew, and the Court consolidated Plaintiff's discrimination actions against USSA, Miami Dade County, the individual officer, and the EEOC employees, into one case. The case proceeded before Judge Scola under Case No. 18-24861-RNS ("Plaintiff's Previous Litigation"). Plaintiff's Previous Litigation involved multiple amended complaints.  The final iteration, Plaintiff's Fourth Amended Complaint, is attached hereto as **Exhibit D**, and the Court should take judicial notice of it.  The Fourth Amended Complaint, filed by Plaintiff

---

[3] The EEOC's Right to Sue Letter was filed by Plaintiff in Plaintiff's Previous Litigation, as part (Page 2) of her filing titled "Plaintiff's Supplemental Filing of EEOC Investigative File Re: 510-2017-03012 (Def. USSA)," which was Docket Entry 88 in Plaintiff's Previous Litigation and is attached hereto as **Exhibit C**.

in Plaintiff's Previous Litigation, alleged discrimination generally and, in addition to other types of discrimination allegedly suffered by Plaintiff, alleged many of the same claims Plaintiff seeks to bring here.

For example, in Count VIII of the Fourth Amended Complaint, Plaintiff alleged that Defendant USSA required her to take four hours of online training during her days off, but that she was not paid, and she sought damages for that. (Fourth Amended Complaint (Exh, D, ¶ 367-73). This is the same claim that Plaintiff attempts to make in this case, in Paragraph 557, 558, 579 of Plaintiff's Second Amended Complaint here.

Defendants USSA and Miami Dade County and other defendants filed Motions to Dismiss Plaintiff's Fourth Amended Complaint. After extensive briefing on all possible issues, by all parties, including Plaintiff who filed numerous oppositions and surreplies, Magistrate McAliley issued a well-reasoned and extremely lengthy report and recommendation, recommending dismissal of all of Plaintiff's claims against Defendants. A copy of Judge McAliley's Report and Recommendation issued in Plaintiff's Previous Litigation is attached hereto as **Exhibit E**. Judge Scola, in turn, again, after careful and independent consideration, issued a detailed Order dismissing Plaintiff's claims without leave to amend and explaining his reasons therefore. A copy of Judge Scola's Order dismissing Plaintiff's claims is attached hereto as **Exhibit F**.

Now, after an adverse ruling on her administrative wage theft complaint and after an Order dismissing without leave to amend all of her discrimination and related claims, Plaintiff brings the *same* hybrid wage and hour / discrimination claims a third or fourth time, in this new amended pleading. All of Plaintiff's claims against Defendants, have been thoroughly and, indeed, exhaustingly litigated in multiple fora over the past two (2) years, and Plaintiff has lost at every stage. Judge Scola, after careful consideration, dismissed Plaintiff's claims on March 27, 2020.

Only five (5) days later, Plaintiff filed the Complaint in this action, realleging the same claims. This Court should not allow Plaintiff to continue to make frivolous claims, already barred by *res judicata.* It should dismiss this Second Amended Complaint, as to Defendants, with prejudice.

### B.   Standard on a Motion to Dismiss

#### 1.   Standard Generally

In a complaint, a plaintiff must plead "(1) a short and plain statement of the grounds for the court's jurisdiction . . . [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A plaintiff is obligated to provide the "grounds" of plaintiff's "entitle[ment] to relief" in order to survive a Rule 12(b)(6) motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). This requires ***more*** than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Id.* The "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

The *Twombly/Iqbal* standard requires a pleading to contain sufficient factual allegations to show a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). *Twombly/Iqbal* "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail to indicate that the plaintiff has a substantial case." *Id.* In determining "plausibility", the court may disregard conclusory allegations even if they are alleged in the form of factual allegations. *Twombly*, 127 S. Ct. at 1950. Further, although for the purposes of a motion to dismiss a court must take all factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation". *Id.* at 1965.

Despite the liberal reading of a *pro se* pleading, it generally will not excuse mistakes regarding procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. (1993). Moreover, the

liberal reading of *pro se* pleadings does not give a court "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc., v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted).

### 2. Consideration of Documents Outside of Plaintiff's Complaint

As indicated above, one of the reasons the Court should grant this Motion to Dismiss is that Plaintiff's claims are barred under principles of *res judicata.* In order to show *res judicata*, Defendants will necessarily have to refer to documents outside of the Plaintiff's Complaint. While on a motion to dismiss, the Court generally limits its consideration to the pleadings and exhibits attached thereto (*GSW, Inc. v. Long Cnty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993)) there are situations such as this that consideration of documents outside the pleadings are appropriate. When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(c) generally requires that "the motion be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent by such a motion." Fed. R. Civ. P. 12(c). "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)). Thus, the Court should consider the pleadings and filing from Plaintiff Previous Litigation.

Furthermore, "the Eleventh Circuit has held that when considering a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to dismiss to a motion for summary judgment." *Martin K. Eby Const. Co., Inc. v. Jacobs Civil, Inc.,* No. 3:05-cv-394-J-32TEM, 2006 U.S. Dist. LEXIS 45966, 2006 WL 1881359, at *1 (M.D. Fla. July 6, 2006). This is because such documents are capable of accurate and ready determination. *Id. (citing*

*Makro Capital of Am., Inc. v. UBS AG*, 372 F. Supp. 2d 623, 627 (S.D. Fla. 2005)). Thus, the Court may review documents filed in other judicial proceedings for the limited purpose of recognizing the "judicial act" taken or the subject matter of the litigation and issues decided, without converting the motion to dismiss to a motion for summary judgment. Id. (*citing Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1166 n.11 (11th Cir. 1995)). As such, this Court should consider both the documents filed in the administrative wage theft matter (most of which Plaintiff herself has filed in the Plaintiff's Previous Litigation) and the pleadings, motions, filing, and orders in the Plaintiff's Previous Litigation.

## II. LEGAL ARGUMENT

### A. Plaintiff's Claims Are Barred by the Doctrine of *Res Judicata*

#### 1. Elements of *Res Judicata*

"Res judicata bars litigation of claims that were or could have been raised in a prior action." *In re FFS Data, Inc.*, 776 F.3d 1299, 1306 (11th Cir. 2015) (citation omitted). Res judicata "bars re-litigation of matters decided in a prior proceeding." *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000). When determining the preclusive effect of a prior federal judgment, federal law applies. *Hart v. Yamaha-Parts Distrib., Inc.,* 787 F.2d 1468, 1470 (11th Cir. 1986). When deciding res judicata resulting from a decision of a court or administrative entity organized under state law, federal courts "apply the preclusion law of the state whose courts rendered the first decision." *Agripost, LLC v. Miami-Dade Cnty*., 525 F. 3d 1049, 1052 n.3 (11th Cir. 2008).

Fortunately, the federal standard for *res judicata* is substantially the same as the Florida standard. Under federal law, "[t]he doctrine of res judicata, or claim preclusion, will bar a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior

and present causes of action are the same." *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1187 (11th Cir. 2003) (internal quotations and citations omitted). If the parties are not identical, then *res judicata* will still apply if new parties are in privity with parties in the original proceeding - that is, in a relationship sufficiently close that "a judgment for or against the party should bind or protect the nonparty." *Hart v. Yamaha-Parts Distrib., Inc.,* 787 F.2d 1468, 1472 (11th Cir. 1986). Under Florida law, *res judicata* prevents re-litigation where there exists "(1) identity of the things sued for; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality in the person for or against whom the claims are made. ." *Gordon v. Gordon,* 59 So. 2d 40 (Fla. 1952); *Johnson v. Young,* 964 So. 2d 719, 32 Fla. L. Weekly D1692 (Fla. 3d DCA July 11, 2007). "The determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions.". *Gordon* at 40.

### 2. If the Elements Are Met, *Res Judicata* Bars Relitigation of Claims Determined by Ether a Court or an Administrative Body

Neither Florida nor federal courts hesitate to apply *res judicata* effect to determinations of administrative bodies, like the Wage Theft Office of the Miami Dade County Department of Regulatory and Economic Resources, Business Affairs Division. In *Crapo v. Acad. for Five Element Acupuncture, Inc.*, 278 So. 3d 113 (Fla 1st DCA 2019), the Court explained, "Our Nation's judicial systems have long recognized that principles of finality and preclusion apply not only to courts but to federal and state administrative bodies acting in a quasi-judicial capacity as well." Indeed, the United States Supreme Court has noted:

> Courts have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." . . . The principle holds true when a court has resolved an issue, and should do so equally when the issue has been

>decided by an administrative agency, be it state or federal, . . . which acts in a judicial capacity.

*Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107-08, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991) (citations omitted). The justification for preclusion is the "sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Id.* at 107. Allowing re-litigation of matters previously resolved would "impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution." *Id.* at 107-08 (citation omitted). *See also Thomson v. Dep't of Envtl. Regulation,* 511 So. 2d 989, 991 (Fla. 1987) ("It is now well settled that res judicata may be applied in administrative proceedings."); *Holiday Inns, Inc. v. City of Jacksonville,* 678 So. 2d 528, 529 (Fla. 1st DCA 1996) ("*Res judicata* (and collateral estoppel) 'is applicable to rulings or decisions of administrative bodies[.]'") (citation omitted); *Jet Air Freight v. Jet Air Freight Delivery, Inc.*, 264 So. 2d 35, 40 (Fla. 3d DCA 1972) (same); *Metro. Dade Cty. Bd. of Cty. Comm'rs v. Rockmatt Corp.*, 231 So. 2d 41, 44 (Fla. 3d DCA 1970) (same); *Rubin v. Sanford*, 168 So. 2d 774, 775 (Fla. 3d DCA 1964) ("There is little question that administrative proceedings are subject to the doctrine of r*es judicata*, to the text of the note and the courts of this state have similarly so concluded.")

A governmental body acts in a quasi-judicial manner when, after notice and a hearing, it enters a judgment based on the evidence presented. *See, e.g., Broward Cty. v. La Rosa*, 505 So. 2d 422, 423 (Fla. 1987) ("An administrative agency conducts a quasi-judicial proceeding in order to investigate and ascertain the existence of facts, hold hearings, and draw conclusions from those hearings as a basis for their official actions."); *Anoll v. Pomerance,* 363 So. 2d 329, 331 (Fla. 1978) ("a judgment becomes judicial or quasi-judicial, as distinguished from executive, when notice and hearing are required and the judgment of the board is contingent on the showing made at the

hearing."); *De Groot v. Sheffield,* 95 So. 2d 912, 915 (Fla. 1957) (". . . when notice and a hearing are required and the judgment of the board is contingent on the showing made at the hearing, then its judgment becomes judicial or quasi-judicial as distinguished from being purely executive."); *cf. Teston v. City of Tampa,* 143 So. 2d 473, 476 (Fla. 1962) (holding that order of board of police and fireman's pensions fund not quasi-judicial because "it was a purely administrative determination without hearing or adversary evidence," noting that "the statute under which the [board] operates makes no requirement whatever for a notice and hearing preliminary to decision.").

> [T]he test of the quasi judicial function . . . [is] whether or not the statutory tribunal had exercised a statutory power given it to make a decision having a judicial character or attribute and consequent upon some notice or hearing provided to be had before it as a condition for the rendition of the particular decision made.

*W. Flagler Amusement Co. v. State Racing Comm'n,* 122 Fla. 222, 165 So. 64, 65 (Fla. 1935) ("A judicial or quasi judicial act determines the rules of law applicable, and the rights affected by them, in relation to past transactions."). Similarly,

> [i]f the affected party is entitled by law to the essentially judicial procedures of notice and hearing, and to have the action taken based upon the showing made at the hearing, the activity is judicial in nature. If such activity occurs other than in a court of law, we refer to it as quasi-judicial.

*Modlin v. City of Miami Beach*, 201 So. 2d 70, 74 (Fla. 1967).

Here, there can be no doubt that the administrative action in which Plaintiff brought a claim of wage theft before the Wage Theft Office of the Miami Dade County Department of Regulatory and Economic Resources, Business Affairs Division was a quasi-judicial action, deserving of *res judicata*. Exhibits A and B hereto establish that Plaintiff received notice of a hearing and an opportunity to present evidence and argument, and that the administrative law judge made a ruling based on that evidence and argument.

        3.        **Both the Administrative Ruling on Wage Theft and the Final Ruling on Plaintiff's Previous Litigation Create a *Res Judicata* Bar to Plaintiff's Second Amended Complaint Here**

A review of the elements of *res judicata*, as they relate to this case, makes it apparent that the doctrine is applicable and bars Plaintiff's Second Amended Complaint here. First, there can be no doubt that this Court, in Plaintiff's Previous Litigation, had jurisdiction to decide the issues brought before it by Plaintiff. Similarly, the Wage Theft Office of the Miami Dade County Department of Regulatory and Economic Resources, Business Affairs Division, in a matter that Plaintiff herself voluntarily filed with that administrative body, also had jurisdiction to decide the wage theft issues that Plaintiff brought before it. Clearly, in both cases (the administrative matter and the Plaintiff's Previous Litigation) there was a decision on the merits, as demonstrated by Exhibits B and F hereto. The Parties were identical, for purposes of *res judicata*, since Plaintiff and USSA were parties to both the administrative proceeding and to Plaintiff's Previous Litigation. Although Miami Dade County was not a party to the wage theft administrative action, a review of the Plaintiff's Second Amended Complaint here shows that she is complaining only about the actions of USSA, and Miami Dade County is simply joined as a joint employer. Accordingly, Miami Dade County is in privity with USSA and benefits from the *res judicata* effect of the earlier rulings. Similarly, AlliedBarton and Universal are in privity with USSA, since the only allegations against them are that they somehow became liable for USSA's actions, after the fact, upon acquiring USSA.

Finally, the issues raised in the three proceedings are identical. The wage theft administrative proceeding raised issues of allegedly unpaid training time, and allegedly improper uniform deductions that Plaintiff claims here. Plaintiff's Second Amended Complaint in this case may (although it is unclear) also raise issues of alleged discrimination and retaliation, which were alleged, examined, and dismissed in Plaintiff's Previous Litigation. Plaintiff's Previous Litigation, like her

Second Amended Complaint here, contains allegations that Plaintiff received less pay than male Hispanic employees, and the Plaintiff's Previous Litigation included claims of unpaid training time and the revoked annual leave. (Exhibit D, ¶¶ 344; 367-73).

All elements for application of *res judicata* are satisfied here. Plaintiff has raised the same issues against the same parties not once before, but twice before. Both times, Plaintiff's claims have been dismissed on the merits. Plaintiff is barred from continuing to raise the same claims here. Plaintiff's Second Amended Complaint must be dismissed with prejudice.

### B. Plaintiff's Second Amended Complaint Shows Her Claims Are Barred by the Applicable Statutes of Limitations

"A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense." *Mann v. Adams Realty Co., Inc.,* 556 F.2d 288, 293 (5th Cir. 1977). To be sure, "[a] dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *United States ex rel. Hunt v. Cochise Consultancy, Inc.,* 887 F.3d 1081, 1085 (11th Cir. 2018). But "[a] plaintiff nonetheless can plead himself out of court" through the factual allegations in the complaint. *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (*en banc*). Likewise, other materials properly considered at the motion-to-dismiss stage may prevent a plaintiff from establishing tolling. *See Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005).

### 1. Plaintiff's Claims Under the FLSA, including her Equal Pay Act Claims, and any State Claims are Time-Barred

Although the claims that Plaintiff seeks to assert are muddled, the title of the Second Amended Complaint itself references "the FLSA laws.". ¶ 8. Count I makes reference to the Equal Pay Act ("EPA"). Both the FLSA and the EPA (which is part of the FLSA) require claims for unpaid overtime compensation under the FLSA to be brought within two years of the violation, except that

in cases involving willful violations of the FLSA, the limitations period is extended to three years. 29 U.S.C. § 255(a). Here. Plaintiff filed her initial Complaint on April 1, 2020, and this Second Amended Complaint on October 28, 2020. Consequently, even if Plaintiff were to allege and show that the Defendants engaged in a willful violation of the FLSA, she can only point to alleged violations that occurred **AFTER** April 1, 2017, the date three years before she filed her initial Complaint, even assuming that any additional claims made in the Second Amended Complaint relate back to the initial Complaint in this action.

Here, the violations claimed by Plaintiff occurred, according to the language of Plaintiff's Second Amended Complaint, **before April 1, 2017**. For example, in Paragraphs 187, 614 of Plaintiff's Second Amended Complaint, Plaintiff makes a claim for an allegedly unpaid $25 per paycheck, characterized as a "kickback," which appears to be a deduction for uniform and equipment. Whatever the deduction was intended to cover, clearly the statute of limitations has passed, since Paragraph 187 asserts that the allegedly improper deductions were made from November 2014 to May 2015. Next, Plaintiff complains, in Paragraphs 131 of Plaintiff's Second Amended Complaint, that she completed certain training, for which she was not paid $24.53. Again, this alleged violation (which is disputed) occurred, according to Plaintiff, prior to April 1, 2017 and is thus barred by the statute of limitations. *Id.* Plaintiff next alleges that she was mandated to complete certain additional online training in February 2017 and she completed that training during that month, but alleges she was not paid. Paragraph 132 of Plaintiff's Second Amended Complaint states, in part, that "Plaintiff completed 3hrs of mandatory training on Feb. 16, 2017." Again, this alleged training and the Defendants' alleged nonpayment occurred before the statute of limitations deadline of April 1, 2017.

Interestingly, the Second Amended Complaint does include one, sole allegation, wholly missing from Plaintiff's original Complaint, of certain alleged training she completed in August 2017, and for which she claims she was never paid. That time period, is more than three (3) years prior to Plaintiff filing her Second Amended Complaint, and therefore, it is also beyond the limitations period, even if Plaintiff were to claim that any FLSA violation was willful.

Plaintiff attempts to get around the clear statute of limitations bar on her FLSA unpaid wage claims by arguing, it seems, that the statute is tolled (although she never explains why) or that each violation happens again on every single paycheck Plaintiff receives, if that past time is not paid in full, no matter whether the alleged violation occurred four, five, or six years in the past. *See* Plaintiff's Second Amended Complaint, ¶¶ 210, 555, 587. This is patently absurd, and would mean that the statute of limitations under the FLSA never expires. No court has interpreted the three-year statute of limitations in this peculiar manner.

Because the allegations of Plaintiff's Second Amended Complaint show all of her FLSA claims are time-barred, all FLSA claims must be dismissed. To the extent that Plaintiff is making other claims for discrimination or retaliation under Title VII of the Civil Rights Act of 1964, those claims are also time-barred because they were not filed within 90 days of Plaintiff's receipt of the EEOC's Right to Sue Letter. Plaintiff's Second Amended Complaint must be dismissed, with prejudice, because all claims are barred by applicable statutes of limitations.

### 2. Plaintiff's State Law Wage Claims Are Time-Barred

Under Fla. Stat. 95.11(4)(c ), a plaintiff has two (2) years, in Florida, to bring a state law action for "[a]n action to recover wages or overtime or damages or penalties concerning payment of wages and overtime." In this case, Plaintiff, in her Second Amended Complaint, admitted separating from employment in January 2018 (Second Amended Complaint, ¶ 170). In this action, Plaintiff

filed her original Complaint on April 1, 2020, over a year too late. Consequently, any claim asserted by Plaintiff under Florida wage laws must be dismissed with prejudice.

### 3. The Lilly Ledbetter Fair Pay Act of 2009 is Inapplicable and Does not Extend the Applicable Limitations Period

In her Second Amended Complaint, Plaintiff references the Lilly Ledbetter Fair Pay Act of 2009. The Lilly Ledbetter Fair Pay Act of 2009 amends Title VII--specifically, 42 U.S.C. § 2000e-5(e)(3)--by adding the following provision:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3, 123 Stat. 5, 5-6.

Accordingly, if Plaintiff were claiming discrimination based on unequal pay, she could have filed a Charge of Discrimination within 300 days of the date she received her final paycheck. Plaintiff separated from employment in January 2018, and it has been much, much more than 300 days since she received her final payment. Clearly, the Lilly Ledbetter Fair Pay Act of 2009 is inapplicable, and provides no relief for Plaintiff's untimely filing, even if her claims were not barred by *res judicata* (as they are).

### C. Plaintiff's Second Amended Complaint Fails to State Any Cause of Action Against Defendants AlliedBarton and Universal

Plaintiff's Second Amended Complaint alleges that at all relevant times she was jointly employed by USSA and Miami Dade County. Plaintiff's Second Amended Complaint, ¶¶ 12, 98. She alleges, in vague and confusing language, that USSA and Miami Dade County engaged in certain actions and omissions including a failure to pay certain wages for training and, possibly,

discrimination and retaliation for reporting discrimination, in the form of lower compensation and lack of benefits. Importantly, she makes absolutely no allegation of any wrongdoing by either Defendant Universal or Defendant AlliedBarton, and her inclusion of these defendants in this lawsuit is simply improper harassment.

Plaintiff alleges that she worked for USSA and Miami Dade County from 2014 until she was constrictively discharged on January 12, 2018. Plaintiff's Second Amended Complaint ¶ 98. The only allegation related to any action or activity by Defendant AlliedBarton is that "Defendant ALLIED[BARTON] purchased Defendant USSA and is now primarily responsible for Defendant USSA's financial obligations that they accrued prior to the acquisition of Defendant USSA." Plaintiff's Second Amended Complaint ¶ 40. This alleged acquisition occurred after Plaintiff's separation and during the pendency of her civil litigation. Plaintiff's Second Amended Complaint ¶ 9, 10. The same allegations, including allegations regarding timing, are made against Defendant Universal. Plaintiff's Second Amended Complaint ¶ ¶ 9, 10, 41, 42.

That is to say, that the **ONLY** allegations against both Defendants Universal and AlliedBarton are that **one year after Plaintiff separated from employment with USSA**, Defendants Universal and AlliedBarton purchased USSA and operated it as a subsidiary. There is absolutely no allegation that these two defendants engaged in any wrongdoing whatsoever affecting Plaintiff, absolutely no allegation that would warrant imputing actions or omissions of either USSA or Miami Dade County to Universal or AlliedBarton, and absolutely no allegation that would justify piercing the corporate veil.

Because Plaintiff has named Defendants Universal and AlliedBarton for no legitimate purpose and seeks only to harass them, and, indeed, Plaintiff's Second Amended Complaint alleges

no wrongful actions or omission by these two entities at all, Plaintiff's claims against both Defendants Universal and AlliedBarton must be dismissed with prejudice.

## CONCLUSION

For all of the reasons set forth above, Plaintiff fails to state a claim for which relief can be granted. Plaintiff's claims are barred by *res judicata*, the applicable statutes of limitations, and, for other reasons discussed above, fail to state any cause of action.

**WHEREFORE,** Defendants USSA, Miami-Dade County, AlliedBarton, and Universal respectfully request that the Court grant the instant Motion to Dismiss with prejudice.

Respectfully submitted this 23rd day of November 2020.

By:   /s/ *Jose I. Leon*
Jose I. Leon, FBN 0958212
jleon@grsm.com
GORDON & REES
SCULLY MANSUKHANI LLP
100 SE Second Street, Suite 3900
Miami, Florida 33131
Telephone:  305-428-5330
Facsimile:   877-644-6209
*Counsel for Defendants*
*U.S. Security Associates, Inc.*
*AlliedBarton Security Services, LLC,*
*Universal Protection Service,*
*and Miami-Dade County*

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2020, the foregoing document has been filed using CM/ECF system which will serve by electronic notice all counsel or parties of record listed on the Service List below, and by electronic mail to those listed below not registered with the CM/ECF system.

                                                  *s/ Jose I. Leon*
                                                  Jose I. Leon, Esq.

**Service List**

Zonya A. Flemings
P.O. Box 350371
Jacksonville, FL 32235-0371
Telephone: 814-434-3164
Email:  zflemings@zonyas.net
*Pro Se Plaintiff*

**GORDON REES SCULLY MANSUKHANI**
Miami Tower, 100 S.E. Second Street, Suite 3900, Miami, FL 33131