**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-cv-21406-BLOOM/Louis

ZONYA A. FLEMINGS,

    Plaintiff,
v.

MIAMI-DADE COUNTY, et al.,

    Defendants.
_____/

**OMNIBUS ORDER**

**THIS CAUSE** is before the Court upon Defendants' Revised Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. [98] ("Defendants' Motion"),[1] and *pro se* Plaintiff's motions responding to Defendants' Motion and which also seek miscellaneous relief, ECF Nos. [100], [111], [112], [114], [125], [126], [127], [128], [136] (collectively, "Plaintiff's Motions"). The Court has considered Defendants' Motion, Plaintiff's Motions, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendants' Motion is granted, and Plaintiff's Motions are denied as moot.

**I.   BACKGROUND**

On April 1, 2020, Plaintiff filed her initial complaint, ECF No. [1]. On August 25, 2020, this case was reassigned to this Court, ECF Nos. [40], [41], and Plaintiff was granted leave to file an amended complaint by September 8, 2020. ECF No. [44]. Following an extension, Plaintiff filed a second pleading, Plaintiff's Amended Complaint & Injunctive Complaint Pursuant to 29

---

[1] Defendants' Motion was filed by U.S. Security Associates ("USSA"), AlliedBarton Security Services, LLC ("AlliedBarton"), Universal Protection Service, LLC ("Universal"), and Board of County Commissions, Miami-Dade County, Florida ("Miami-Dade County") (collectively, "Defendants"). No other party defendants have entered an appearance in this case.

USC § 216(b) Violations, ECF No. [60]. On October 28, 2020, without seeking leave of Court, Plaintiff filed the operative complaint, "Plaintiff's Second Amended Complaint & Injunctive Complaint Pursuant FL Min Wage Statue [sic] (F.S§448.10), 29 USC § 216(b) Violations, to Recover Lost Wages under Florida Law & FRCP Rule 11 Notice & Intent," ECF No. [70] ("SAC"). That same day, the Court accepted the SAC[2] and cautioned Plaintiff that "she must comply with governing procedural rules in the same way that all litigants must follow them," and that "[f]urther non-compliance will not be regarded positively by the Court nor excused." ECF No. [74]. On November 23, 2020, Defendants filed Defendants' Motion, ECF No. [98], which in turn prompted a flurry of filings by Plaintiff seeking a wide array of relief, including a motion for leave to file a third amended complaint, ECF No. [128].

### A. The Second Amended Complaint

The SAC is 81 pages long, comprised of over 600 paragraphs, and purports to assert numerous causes of action against numerous defendants under federal and state laws. ECF No. [70]. Unfortunately, the SAC is not presented in chronological order nor arranged by discrete thematic categories, and the pleading contains redundant, conclusory, inconsistent, and seemingly irrelevant allegations. As best as can be discerned, the SAC appears to seek redress for alleged racial and sex discrimination, retaliation for participating in protected activities, recovery of unpaid wages, and violations of Plaintiff's constitutional rights. *Id.* at ¶¶ 25-39, 193-98. Plaintiff is a Black female. *Id.* at ¶¶ 4-6. According to the SAC, between October 2014 and January 2018, Plaintiff was employed jointly by USSA and Miami-Dade County as a security guard. *Id.* at ¶¶ 7, 12, 98, 117. She also alleges that Universal is financially liable because of its acquisition of AlliedBarton,

---

[2] On October 29, 2020, Plaintiff filed a different second amended complaint, ECF No. [76], which filing was later stricken on November 16, 2020 based on Plaintiff's representation that ECF No. [70], the instant SAC, is her desired pleading. ECF No. [91].

who had previously purchased USSA. *Id.* at ¶¶ 11, 40-43, 264-67. Plaintiff alleges that during her employment, she was not properly compensated due to unpaid wages and unpaid overtime, for which she estimates she is owed more than $1 million. *Id.* at ¶ 290.[3]

Count I, titled "Sex discrimination claim arising from under FL. Minimum Wage Act or under the Equal Pay Act ("EPA"), with the Lilly Ledbetter Fair Pay Act of 2009, (whichever is greater) and notice of the intention to file a sanction," *id.* at ¶¶ 284-364, seeks to "recover underpayment & nonpayment of wages due to Employer(s) discriminating against Plaintiff for her being a female" based on the Florida Minimum Wage Act, the FLSA, or the Ledbetter Act, "[w]hichever is greater." *Id.* at ¶ 285. However, while this count is purportedly based only on sex discrimination, it also asserts that Plaintiff was discriminated based on her race and her prior EEO activities, *id.* at ¶¶ 293-97, 359-61; alleges that Defendants' counsel, Jose Leon, submitted "fabricated statements" and "material[ly] defective document[s]" to the Court, is supposedly conflicted from representing Defendants, and is in a conspiracy with numerous individuals against Plaintiff, *id.* at 328-34, 354-357; and alleges wrongdoing by Defendants and co-defendants Pablo Castillo ("Mr. Castillo") and Peter Kouchalakos ("Mr. Kouchalakos") yet fails to specify the actual parties to the count.

Count II, tilted "Retaliation claim arising from under FLSA Law along with an action to recover unpaid wages arising from under Florida law against Defendants USSA, as amended MDC & Castillo," *id.* at ¶¶ 365-82, appears to be asserted only against Defendants USSA, Miami-Dade County, and Mr. Castillo. However, the body of the count also alleges that "defendant" Michael Ferrell ("Mr. Ferrell") discriminated against her and violated her rights under the FLSA. *Id.* at ¶¶ 375-79.

---

[3] The SAC fails to set forth any basis to evaluate how this figure was computed, especially as Plaintiff also "estimates" that approximately $54,000 was withheld from her income. *Id.* at ¶ 289.

3

Count III, titled "§§ 1985, 1986 claim," *id.* at ¶¶ 383-392, appears to assert a claim under 42 U.S.C. §§ 1985, 1986, against co-defendant Nowack and Olson, PLLC ("Nowack") for engaging in a conspiracy to deprive Plaintiff of her home. *Id.*

Count IV, titled "§§ 1985, 1986 claim," *id.* at ¶¶ 383-426, appears to challenge Mr. Kouchalakos' presence at an administrative wage theft hearing against USSA in August 2018, but it also alleges discrimination and retaliation by Miami-Dade County, USSA, and Mr. Castillo. Notably, as part of Plaintiff's "redressing sought," *id.* at ¶ 426, Plaintiff sets forth a "Count III – FLSA violation against the County and Defendant Castillo," *id.* at ¶¶ 426-441, and another "Count III – Florida minimum wage act violation against USSA, as amended the County, and Defendant Castillo," *id.* at ¶¶ 442-57.

Count IV,[4] titled "§§ 1985, 1986 civil conspiracy claim against Defendant Kouchalakos, Nowack Law, Schofield, and Gordon & Rees. Additionally, an injunction claim for an equal amount of this claim to every person that was aware of an unlawful act against Plaintiff had occurred – or – was about to occur and failed/negl[e]cted to act, even though it was in their power/authority to assist Plaintiff," *id.* at ¶¶ 458-502, alleges a conspiracy between USSA and other co-defendants to transfer property out of her name without her authorization, but also contains allegations that Miami-Dade County submitted "material defective information" to the Internal Revenue Service and published her and her former husband's Social Security Numbers on the internet, *id.* at ¶¶ 475-76, and it seeks treble damages for costs associated with her bankruptcies. *Id.* at ¶ 502.

Count V, titled "Injunction pursuant to FL Statute 95.11(4)(c) for the recovery of unpayed [sic] minimum wages & unpaid overtime compensation from any Defendant that is found in

---

[4] Plaintiff mislabels this count and the remaining individual counts. For ease of reference, the Court tracks the labels used in the SAC.

violation of the identified rights in this claim," *id.* at ¶¶ 503-600, purports to seeks relief for unpaid wages and overtime work, but it also contains allegations against co-defendants Arthur Schofield ("Mr. Schofield") and Lawrence McGuinness ("Mr. McGuinness") sounding in legal malpractice, wrongdoing by Mr. Kouchalakos and Mr. Castillo, Mr. Leon's supposed submission of "material[ly] defective documents" to this Court, and alleged FLSA violations by "defendants" "Marsh Law, Bank, Skiba & Sundberg."

Count VI, titled "Injunction pursuant [to] minimum wage rate violation arising from under Fla. Constitution Article X. § 24(c), (f) and 448 § 110(f) of the FL law," *id.* at ¶¶ 601-16, appears to seek recovery of unpaid wages and overtime compensation from USSA and Miami-Dade County under either Florida law or the FLSA, *id.* at ¶ 603, but it also seeks damages from Mr. Castillo, *id.* at ¶ 616(G).

Finally, Count VII, titled merely "Count VII against the County & Defendant USSA," *id.* at ¶ 617-39, purports to be a wage claim under the FLSA against Miami-Dade County and USSA, yet it also appears to seek compensatory relief against Mr. Castillo and reimbursement of her costs that she and her "alleged attorney" accrued, among other forms of relief.

### B. Defendants' Motion and Plaintiff's subsequent cascade of filings

On November 23, 2020, following leave to revise their initial motion to dismiss, ECF No. 88, which motion had been based on the allegations contained in the now-stricken second amended complaint, ECF No. [76], Defendants filed the instant Motion. ECF No. [98]. Defendants argue that "[a]s far as it relates to Defendants USSA and Miami-Dade County, [the SAC] appears to make wage and hour claims and discrimination claims against them, although the actual causes of action are altogether ambiguous." *Id.* at 2. They add that while the SAC contains "many additional allegations," such as the existence of a conspiracy, "it appears" that those claims are not directed at USSA or Miami-Dade County. *Id.* at 3. Defendants' Motion makes three primary arguments:

(1) Plaintiff's claims are barred by *res judicata* based on prior litigation activity in both federal court and state administrative proceedings; (2) the claims are barred by the applicable statutes of limitations;[5] and (3) the SAC fails to state any causes of action against AlliedBarton or Universal.

On November 30, 2020, Plaintiff filed a "Motion to Strike Defendants' Motion to Dismiss (DE88) of Plaintiff's Second Amended Complaint (DE76) in its Entirety, including Striking Attorney Robin Taylor Symons, Attorney Jose Leon & Attorney D. Salinas from Practicing Law with or Representing any of the Defendant [sic] in This Case under the Auspices of being an Attorney Employed by Gordon & Rees Scully Mansukhani LLP ("GRSM")," ECF No. [100] ("Plaintiff's First Motion").[6] Although not fully clear, Plaintiff contends that Defendants' chosen counsel cannot represent them in this case because she has also named the law firm of Gordon & Rees Scully Mansukhani LLP ("GRSM") as a co-defendant. *Id.* at 2-6. She also maintains without elaboration that Defendants' prior motion to dismiss, ECF No. [88], "was not created nor submitted in good faith," *id.* at 6, and that Mr. Leon is "knowingly and willingly in a conspiracy agreement" with USSA and numerous other individuals to defraud her and to cause injury to her person. *Id.* at 6-7.

On November 30, 2020 and then on December 3 and 4, 2020, Plaintiff filed four documents called "Plaintiff's Supplemental Filing of Miscellaneous Exhibits in Accordance with Rule 7.1(b)(1)," *see* ECF Nos. [101]; [104]; [105]; and [106], containing numerous materials but no explanation as to their relevance, purpose, or role in this lawsuit. She also filed a document titled

---

[5] Although Defendants assert that "the claims that Plaintiff seeks to assert are muddled," ECF No. [98] at 14, they focus on the limitation periods under the FLSA, the Civil Rights Act of 1964, Fla. Stat. § 95.11(4)(c), and the Lilly Ledbetter Fair Pay Act on 2009. *Id.* at 14-17.

[6] The bulk of Plaintiff's First Motion challenges Defendants' prior motion to dismiss, ECF No. [88], which was mooted and superseded by the SAC and the now-pending Defendants' Motion. Accordingly, the Court will only address the portions of the motion that are not moot—Plaintiff's attempts to disqualify Defendants' counsel.

"Plaintiff's Supplemental Filing of Mortgage Related Exhibits in Accordance with Rule 7.1(b)(1)" on December 9, 2020. ECF No. [109].

On December 11, 2020, Plaintiff filed a document stating that she mailed a motion seeking a three-day extension to respond to Defendants' Motion, ECF No. [110], and a document titled "Plaintiff's Omnibus of Joining Motions to Her Motion to Strike Defendants' Miami-Dade County, FL, et al. Affirmative Defenses, etc. & Plaintiff's Response to the Defendants' Motion to Dismiss(DE98) Plaintiff's Second Amended Complaint ("SAC")("DE70")," ECF No. [111] ("Plaintiff's Second Motion"). In Plaintiff's Second Motion, she appears to request the Court to (1) add certain parties as defendants; (2) transfer a case in Pennsylvania state court to this Court; (3) correct the docket to remove Miami-Dade County's termination date and have the name "Board of County Commissioner, Miami-Dade County, Florida" changed simply to "Miami-Dade County," and to reflect Defendants' counsel as counsel of "Miami Appellate Law Firm;" (4) grant her "emergency financial relief" under the FLSA; (5) referral to the Volunteer Attorney Program and service by the U.S. Marshals; (6) grant a writ of mandamus against a bank for foreclosure of a property in Pennsylvania; and (7) compel her former employers to re-hire her and place her on administrative paid leave. *Id.*

On December 11, 2020, Plaintiff filed her "Motion to Strike Defense Counsels' Professional Position in This Case, Defendants' Affirmative Defenses and Exhibits. Additionally, Plaintiff Files Her Response to Defendant Miami-Dade County, Florida, et al. Motion to Dismiss(DE98) . . . with Plaintiff's Reply to Defendants' Response(DE102) to Plaintiff's Statement of Claim[,]" ECF No. [112] ("Plaintiff's Third Motion"). In Plaintiff's Third Motion, Plaintiff seeks to disqualify Defendants' counsel because Defendants' Motion "scandalously" furthers the goals of a purported conspiracy agreement "that most of the Defendants have against Plaintiff[.]" *Id.* at 2. She additionally argues without any substantive analysis that her claims are

7

not barred by *res judicata* or statutes of limitations. *Id.* at 14-16. Further, she notes that she "asserts the following causes of action" in the SAC: unpaid wages and overtime compensation under the FLSA or Florida law and redress for deprivations of her Constitutional rights and civil rights. *Id.* at 16-18.

On December 14, 2020, Defendants filed their response, ECF No. [113] ("Defendants' Response"), opposing Plaintiff's First Motion, ECF No. [100], and Plaintiff's Third Motion, ECF No. [112], particularly as those motions relate to Plaintiff's efforts to disqualify counsel. Defendants' Response contends that Plaintiff's filings are "full of baseless invective against defense counsel" and are "totally devoid of any legal or factual basis[.]" ECF No. [113] at 2. On the factual front, Defendants contend that attorneys Jose Leon and Robyn Symons are employed by GRSM, not "Miami Appellate Law Firm," and that Daisy Salinas is Mr. Leon's legal assistant, not counsel. *Id.* at 3-4. They contend that Plaintiff's allegations are groundless and made in bad faith. *Id.* at 4. On the legal front, Defendants contend that Plaintiff fails to carry her burden to prove grounds for disqualification even if Plaintiff's "absolutely false" allegations were true. *Id.* at 5-6.

On December 21, 2020, Plaintiff filed a motion to strike Defendants' Response, ECF No. [114] ("Plaintiff's Fourth Motion"). In Plaintiff's Fourth Motion, she argues that Mr. Leon "misrepresent[s]" Miami-Dade County, Universal, and AlliedBarton, and that he and others are part of a "conspiracy" against Plaintiff, which has culminated in her becoming homeless and denied federal employment. *Id.* She also maintains that the SAC "contains two primary violations against Plaintiff's federally protected rights:" FLSA violations and civil conspiracy under 42 U.S.C. § 1985(3). *Id.* at 5. Additionally, she denies that Defendants' counsel is employed by GRSM, requests that they be sanctioned, and she states that she has respect for Judge McAliley. *Id.* at 7-10.

On December 21, 2020 and again on December 29, 2020, Plaintiff filed two documents titled "Plaintiff's Supplemental Filing of Miscellaneous Exhibits in Accordance with Rule 7.1(b)(1)," ECF Nos. [117] and [120], without any explanation as to these documents' role, purpose, or relevance. On December 21, 2020, Defendants filed a reply in support of Defendant's Motion, ECF No. [118] ("Defendants' Reply"). In Defendants' Reply, they argue that (1) Plaintiff's previous suits and administrative action, which resulted in adverse rulings against Plaintiff, cause a *res judicata* bar to the present lawsuit; (2) Plaintiff's claims are untimely; and (3) the SAC fails to assert any claims against AlliedBarton or Universal. *Id.* In this respect, Defendants contend that no conspiracy claim is brought against them, *id.* at 2-5, and that the only causes of action asserted against them in the SAC include Counts I and II, ECF No. [70] at 35-48, the first Count IV, *id.* at 49-52, the second Count III, *id.* at 52-55, and Counts V, VI, and VII, *id.* at 61-79.

On December 28, 2020, Defendants filed a limited opposition responding to Plaintiff's Third Motion, ECF No. [119] ("Defendants' Limited Response"), referring the Court to their briefing in ECF Nos. [113] and [118], and attaching a certified copy of the Final Order entered in Plaintiff's administrative wage claim hearing from August 2018. On January 4, 2021, Defendants filed a response to Plaintiff's Fourth Motion, ECF No. [124], representing that they do not wish to "wast[e] the resources of the Court and parties on absurd and circuitous bickering over baseless accusations, mirages, and other flights of fancy[.]" *Id.* That same day, Plaintiff filed a document seemingly replying to Defendants' Limited Response and, effectively, sur-replying to Defendants' Motion. *See* ECF No. [125]. In this filing, Plaintiff asserts that Judge Moreno is not presiding over this action, Defendants' counsel "misrepresent[s]" Defendants and that they are not employed by GRSM, contends that Miami-Dade County and Universal are defendants, and asserts that her claims are timely raised. *Id.*

On January 4, 2021, Plaintiff filed a motion to strike, ECF No. [126] ("Plaintiff's Fifth Motion") seeking to strike portions of Defendants' Reply, ECF No. [118], and rearguing matters previously addressed in her earlier filings. She also filed a motion to substitute or add a signed signature page to a document missing her signature, ECF No. [127] ("Plaintiff's Sixth Motion"), and a motion for leave to file a third amended complaint, ECF No. [128] ("Plaintiff's Seventh Motion"). In Plaintiff's Seventh Motion, which fails to attach the proposed amended pleading, she asserts that she wishes to amend the SAC to add additional defendants and to raise at least two new causes of action for FLSA violations. *Id.* That same day, she also filed four documents containing materials labeled EEOC Investigative File, ECF No. [129]; state court documents from state case #2018-035860-CA-01, ECF No. [130]; administrative hearing case #19-2223, ECF No. [131]; and Plaintiff's partial summary judgment related documents from case #18-cv-24861, ECF No. [132].

On January 6, 2021, Plaintiff filed a Response to Defendants' Revised Motion to Dismiss, ECF No. [134] ("Plaintiff's Sur-Sur-Reply"), even though she has already filed numerous papers responding to and opposing Defendants' Motion. *See* ECF Nos. [100]; [112]; and [125]. In Plaintiff's Sur-Sur-Reply, Plaintiff again maintains that USSA and others are in a conspiracy agreement to defraud Plaintiff, Judge Moreno is not presiding over this case, Defendants' counsel misrepresent Defendants and are not employed by GRSM, and Miami-Dade County remains a current defendant. She also disputes Defendants' statute of limitations defense and contends that she states an actionable claim against Universal. *Id.*

On January 11, 2021, Plaintiff filed a "Motion for Relief from Show Cause Order(DE135) or Alternatively, Plaintiff's Unopposed Response," ECF No. [136] ("Plaintiff's Eighth Motion"). In Plaintiff's Eighth Motion, she asserts that her lawsuit against Defendants involves FLSA violations, fraud, and conspiracy, and that it is "against established laws" for her to participate in

10

mediation. *Id.* She requests instead that a magistrate judge conduct a settlement conference. *Id.* Defendants filed a response, ECF No. [137], representing that they do not oppose requesting a settlement conference with a magistrate. *Id.*

The Motions, accordingly, are ripe for consideration.

## II.  LEGAL STANDARD

### A.  Motion to dismiss

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful

conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### B. *Pro se* litigants

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This leniency, however, does not confer on *pro se* litigants "a right to receive special advantages not bestowed on other litigants. [The *pro se* litigant] must, for example, abide by local rules governing the proper form of pleadings." *Procup v. Strickland*, 760 F.2d 1107, 1115 (11th Cir. 1985). Further, courts cannot serve as *de facto* counsel for a party and cannot rewrite a deficient pleading for the sake of sustaining an action. *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1264 (S.D. Fla. 2004). The Court cannot simply "fill in the blanks" to infer a claim, *Brinson v. Colon*, 2012 WL 1028878, at *1 (S.D. Ga. Mar. 26, 2012), as "it is not the Court's duty to search through a plaintiff's filings to find or construct a pleading that satisfies Rule 8," *Sanders v. United States*, 2009 WL 1241636, at *3 (N.D. Ga. Jan. 22, 2009); *see Bivens v. Roberts*, 2009 WL 411527, at *3 (S.D. Ga. Feb. 18, 2009) ("[J]udges must not raise issues and arguments on plaintiffs' behalf, but may only construe pleadings liberally given the linguistic imprecision that untrained legal minds sometimes employ." (citing *Miller v. Donald*, 541 F.3d

1091, 1100 (11th Cir. 2008))). In determining whether a *pro se* litigant has stated a claim, "the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations," while keeping in mind that "wildly implausible allegations in the complaint should not be taken to be true." *Miller*, 541 F.3d at 1100.

### III. DISCUSSION

Determining whether Defendants are entitled to dismissal with prejudice raises two overarching issues. First, whether Defendants' counsel is disqualified (thus making their filings a nullity), and if not, second, whether the SAC fails to state actionable claims. The Court will address each issue in turn.

#### A. Disqualification of counsel is unwarranted

"The party bringing the motion to disqualify bears the burden of proving grounds for disqualification." *Hermann v. GutterGuard, Inc.*, 199 F. App'x. 745, 752 (11th Cir. 2006) (citing *In re Bellsouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003)); *see also General Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1337 (S.D. Fla. 2001) ("The burden of proof initially is on the moving party to establish grounds for disqualification."). "Motions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear. . . . Second, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of parties." *Hermann*, 199 F. App'x at 752.

Disqualification of counsel is a drastic remedy and will not be granted lightly. *See Metrahealth Ins. Co. v. Anclote Psychiatric Hospital, Ltd.*, 961 F. Supp. 1580, 1582 (M.D. Fla. 1997) (noting that an order for disqualification is a "drastic means which courts should hesitate to impose except when absolutely necessary.") (citation omitted). Indeed, disqualification is a "harsh sanction" that works "substantial hardship on the client" and should, thus, "be resorted

13

to sparingly." *Hermann*, 199 F. App'x at 752 (quoting *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir.1982)). In this regard, "courts are skeptical [of motions to disqualify counsel] because th[e]se motions are sometimes filed for tactical reasons or to harass the other party." *Silvers v. Google, Inc.*, No. 05–80387–CIV, 2007 WL 141153, at *1 (S.D. Fla. Jan. 16, 2007). Accordingly, "[b]ecause a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." *In re BellSouth Corp.*, 334 F.3d at 961.

Plaintiff fails to carry her heavy burden to disqualify Defendants' counsel from this lawsuit. Not only are the potential grounds for disqualification entirely unclear, the Court fails to see why Defendants should be deprived of their chosen counsel. She points to no ethical violations by counsel, no conflicts of interest arising from their representation of Defendants, nor any appearance of impropriety by their presence in this lawsuit. While Plaintiff contends that Mr. Leon submitted "fabricated" and "defective" documents to the Court and is somehow in a "conspiracy" against her, she offers no support for these serious charges. Regardless, counsel's mere representation of her adversaries in this lawsuit (and in other related proceedings) does not create grounds for disqualification much less evidence a conspiracy. Further, that Plaintiff disagrees generally with the validity of Defendants' asserted defenses does not make Defendants' submissions to the Court fabricated or defective. Simply put, the Court finds Plaintiff's efforts to disqualify counsel to be abusive, harassing, and pure gamesmanship. ECF Nos. [113]; [119]. Accordingly, Plaintiff's motions seeking to disqualify counsel, ECF Nos. [100] and [112], are denied.

### B. The SAC fails to state actionable claims despite numerous amendments

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement of the claim" that shows that the pleader is entitled to relief. Fed. R.

Civ. P. 8(a)(2). The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a "shotgun pleading" that violates Rule 8(a)(2). *Byrne v. Nezhat*, 261 F.3d 1075, 1129–30 (11th Cir. 2001). The Eleventh Circuit Court of Appeals has identified four categories of shotgun pleadings, stating

> [t]hough the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

Shotgun pleadings fail to make the connection between "the substantive count and the factual predicates . . . [such that] courts cannot perform their gatekeeping function with regard to the averments of [the claim]." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279–80 (11th Cir. 2006). "[T]he leniency afforded to *pro se* litigants does not permit them to file an impermissible shotgun pleading." *Rodriguez v. Scott*, No. 18-CIV-14005, 2018 WL 9617230, at *3 (S.D. Fla. Mar. 7, 2018) (quotations omitted). Courts in this district and the Eleventh Circuit have warned litigants that shotgun pleadings tend to "impede the orderly, efficient and economic disposition of disputes as well as the court's overall ability to administer justice." *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1336 (S.D. Fla. 2010) (citing *Byrne*, 261 F.3d at 1128–31 (11th Cir. 2001)); *see also Strategic Income Fund, L.L.C. v. Spear, Leeds &*

*Kellogg Corp.*, 305 F.3d 1293, 1296 n.10 (11th Cir. 2002) (expounding the various ways in which shotgun pleadings harm the courts and other litigants). "Generally, when 'a more carefully drafted complaint' might state a claim, the plaintiff must be given a chance to amend before dismissal." *Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 955 (11th Cir. 2019) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)). "However, the district court need not provide such an opportunity where the plaintiff has repeatedly failed to cure deficiencies in his complaint through previous amendments or where amendment would be futile." *Id.* (quoting *Bryant*, 252 F.3d at 1163).

Here, similar to each of Plaintiff's filed pleadings, ECF Nos. [1], [60], and [76], the SAC, ECF No. [70], is a quintessential shotgun pleading. Although the Court previously granted Plaintiff leave to amend, in which the Court reminded her that "any amendment must comply with the Federal Rules of Civil Procedure, the Local Rules, and must set forth discernible causes of action upon which relief may be granted" and that the "extensive list of requested relief contained in [her initial complaint] does not substitute for a well-pled claim," ECF No. [44], Plaintiff has not followed that instruction. Unfortunately, since the Court granted Plaintiff leave to amend in August 2020, Plaintiff's complaints have progressively lengthened in size yet become far less clear in material respects, particularly as to the specific claims asserted against each Defendant and the facts underlying each claim. In this regard, every one of the four *Weiland* shotgun pleading categories applies to the instant SAC despite Plaintiff having amended her complaint three times.

As an initial matter, the Court remains entirely unclear as to the actual identities of all Defendants that Plaintiff sues (or even intends to sue) in the SAC. Although the pleading lists certain Defendants in the case heading on the first page, Plaintiff also labels numerous other individuals throughout the SAC as Defendants, such as Mr. Ferrell, *see, e.g.*, ECF No. [70] at ¶¶ 33, 73, 333, 375-79, 480(c), 533, 586-87, 598, while purporting to bring claims against them.

This uncertainty as to whom Plaintiff sues—the most basic component of a lawsuit—is further magnified by structural pleading deficiencies that go to the very essence of the SAC.

First, setting aside the uncertainty as to the number of claims Plaintiff intends to assert, every count except one expressly re-adopts and re-incorporates paragraphs 1 through 283 and Counts I and II into the count, thus causing each count to be a combination of at least three counts. Second, the SAC is replete with conclusory, vague, and immaterial facts that are disconnected from any particular cause of action. For instance, Plaintiff alleges that someone attempted to gain access to her hotel room and her vehicle in July 2020, unknown persons came to her house in August 2020 but police did not respond, and between July 2020 and September 2020, she was followed and chased by unmarked vehicles. *Id.* at ¶¶ 223-27. Third, Plaintiff's counts appear to commingle numerous causes of action within each separate count. For example, Counts I and II, which again are re-incorporated into virtually every subsequent count, seem to assert claims under state and federal laws for recovery of unpaid wages and overtime, discrimination and violation of Plaintiff's civil rights, and civil conspiracy. However, like Defendants, the Court is unable to discern which claims are even at issue throughout the SAC because "the actual causes of action are altogether ambiguous." ECF No. [98] at 2.[7] Fourth, even if Plaintiff's claims were not commingled or otherwise deficient in the manners noted above, the SAC still fails to specify clearly which Defendants are the subject of each count. For example, Counts I, III,[8] IV,[9] and VI

---

[7] In fact, underscoring the SAC's shotgun nature, Defendants emphasize that Plaintiff does not assert conspiracy claims against them, *see* ECF Nos. [98] at 3; [118] at 2, 4-5, yet the SAC seems to allege that USSA and Miami-Dade County, among many others, are parties to a conspiracy agreement, *see* ECF No. [70] at ¶¶ 33, 333, 465, and Plaintiff's filings treat Defendants as co-conspirators. *See, e.g.*, ECF No. [100] at 6-7, 14; [111] at 4; [112] at 1-2, 10; [114] at 3-5; [125] at 2-3, 7-8; [134] at 2-3, 8-9.

[8] ECF No. [70] at 48-49.

[9] *Id.* at 49-52.

do not list the intended parties, Count V appears to be directed to "any defendant that is found in violation of the identified rights in this claim," and the prayer for relief in Count VII is against "Defendant" even though the title of that count references USSA and Miami-Dade County and the body of the count also implicates Mr. Castillo and GRSM. Accordingly, the SAC is a shotgun pleading and is subject to dismissal.

Because Plaintiff (1) has been instructed previously on the inadequate nature of her pleadings, (2) has been granted leave to amend twice (including the Court retroactively accepting the instant SAC despite her failing to secure leave, ECF No. [74]), but failed to set forth actionable claims, and (3) despite having been warned to comply with governing procedural rules, ECF No. [74] at 2, has bombarded the Court's docket with voluminous and largely irrelevant and meritless filings that are procedurally improper, including numerous motions to strike as well as an unauthorized sur-reply and sur-sur-reply, dismissal of the SAC without leave to amend is warranted. Additionally, while Plaintiff presently seeks leave to amend, as reflected in Plaintiff's Seventh Motion, ECF No. [128], the Court does not find a basis to conclude that this new pleading—which would be Plaintiff's fifth complaint—would set forth actionable claims. All of Plaintiff's complaints have been shotgun pleadings, and Plaintiff makes no effort to establish grounds for leave except to state that she wants to add certain parties and she believes she has "new causes of action" for FLSA violations that "didn't exist, or Plaintiff was not aware of until recently." *Id.* at 1. These generalized statements do not provide good cause for amendment. Regardless, Plaintiff fails to attach the proposed amended complaint for the Court's review, which alone justifies denying leave.[10]

---

[10] *See* Local Rule 15.1 ("A party who moves to amend a pleading shall attach the original of the amendment to the motion in the manner prescribed by Section 3I(1) of the CM/ECF Administrative Procedures. Any amendment to a pleading, whether filed as a matter of course or upon a successful motion to amend, must, except by leave of Court, reproduce the entire pleading

Separately, amendment is futile. Although the Court and Defendants remain unclear as to the precise causes of action that Plaintiff intends to raise in the SAC, Plaintiff represents that her lawsuit contains "two primary violations" or "two main claims" against Defendants: FLSA violations (including related state claims) and civil conspiracy. ECF Nos. [114] at 5; [125] at 2; [134] at 2. The FLSA provides a two-year statute of limitations to recover unpaid wages or unpaid overtime compensation, except that a "cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Florida law provides a two-year limitations period "to recover wages or overtime or damages or penalties concerning payment of wages and overtime." *See* Fla. Stat. § 95.11(4)(c). Accordingly, as to wage and overtime claims, they all must have accrued no later than April 1, 2017—three years before Plaintiff filed this lawsuit.

However, even if the Court were to disregard Plaintiff's conclusory "willful violations" allegations and accept that a three-year limitations period applies, Plaintiff's allegations reflect conduct occurring before April 1, 2017. *See, e.g.*, ECF No. [1] at ¶¶ 45, 111, 127-29, 187 (seeking compensation for $300 "kickback" from her paycheck, which occurred during April 16, 2015 through September 2015); ¶¶ 131-32, 557-58 (seeking unpaid overtime compensation for training in October 2016 and February 2017); ¶¶ 625-27 (alleging that she was paid less than male co-workers in December 2014).[11] Thus, they fail as a matter of law. Further, Plaintiff's wage and hour/discrimination claims have been previously litigated in state and federal forums, and

---

as amended, and may not incorporate any prior pleading by reference. When a motion to amend is granted, the amended pleading shall be separately filed and served forthwith.").

[11] The SAC makes an unadorned allegation that Plaintiff was not paid for overtime training work in August 2017. *Id.* at ¶¶ 133-35. However, as Defendants state, these allegations were not raised in the initial complaint, and Plaintiff fails to show that any limitations period as to these allegations should relate back to the April 1, 2020 period rather than the SAC's October 28, 2020 filing date.

Plaintiff's claims have been unavailing at each turn on the merits. *See* ECF Nos. [98-2]; [98-5]; [98-6]. The same holds true with Plaintiff's civil conspiracy claims. *See* ECF Nos. [98-5]; [98-6]. The Court, therefore, agrees with Defendants that Plaintiff is not entitled to continue to re-litigate these matters. ECF No. [98] at 14 ("Plaintiff has raised the same issues against the same parties not once before, but twice before. Both times, Plaintiff's claims have been dismissed on the merits. Plaintiff is barred from continuing to raise the same claims here."). Accordingly, dismissal with prejudice is appropriate.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion, **ECF No. [98]**, is **GRANTED**.

2. The Second Amended Complaint, **ECF No. [70]**, is **DISMISSED** *with prejudice*.

3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED** as moot, and all deadlines are **TERMINATED**.

4. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 14, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Zonya A. Flemings
PO Box 350371
Jacksonville, FL 32235-0371
Email: ZFLEMINGS@ZONYAS.NET